# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF MASSACHUSETTS

## EASTERN DIVISION

|  |  |
|---|---|
| In re<br><br>SUSAN C. MORENCY,<br><br>          **Debtor**<br>———————————————<br>CARL FOLLO,<br>FOLLO HOSPITALITY, INC., and<br>CARPA REAL ESTATE, LLC,<br><br>          **Plaintiffs**<br><br>v.<br><br>SUSAN C. MORENCY,<br><br>          **Defendant** | **Chapter 7**<br>**Case No. 10-13666-FJB**<br><br><br><br><br><br>**Adversary Proceeding**<br>**No. 10-1133** |

## MEMORANDUM OF DECISION

By their complaint in this adversary proceeding, plaintiffs Carl Follo ("Follo"), Follo Hospitality, Inc., and CARPA Real Estate LLC (collectively, "the Plaintiffs") seek a determination that their claim against the debtor, Susan Morency ("Morency"), for fraud—fraud by which the Plaintiffs were allegedly induced to purchase an inn (the "Inn") of which Morency was indirectly a part owner—is excepted from discharge under 11 U.S.C. § 523(a)(2)(A) and (B), and they seek this determination exclusively on the basis of the issue-preclusive effect of a Vermont judgment (the "Judgment").  Morency denies the operative allegations, disputes the issue-preclusive effect of the Judgment, and counterclaims for costs and attorney's fees under 11 U.S.C. § 523(d).  After a trial, the Court now enters the following findings and conclusions and, on the basis thereof, determines that the debt is not excepted from discharge and denies relief under § 523(d).

**PROCEDURAL HISTORY**

On April 5, 2010, Morency filed a petition for relief under chapter 7 of the Bankruptcy Code.  No

objection to entry of discharge was filed, and therefore a discharge entered in favor of Morency on July

26, 2010.  Nonetheless, the Plaintiffs timely filed the complaint commencing this adversary proceeding.

The complaint asserts two counts for determination that Plaintiffs' claim against Morency is excepted

from discharge:  one under 11 U.S.C. § 523(a)(2), for false representation and actual fraud, and another

under 11 U.S.C. § 523(a)(6), for willful and malicious injury.  The Plaintiffs have not prosecuted the latter

count at trial and do not now seek judgment on the basis of it; accordingly, any right to relief they may

have under subsection (a)(6) is deemed waived.  With respect to the former count, the complaint does

not indicate whether the Plaintiffs are proceeding under subsection (a)(2)(A), (a)(2)(B), or both.  In

relevant part, Morency's answer denies the operative allegations of the complaint and disputes the

preclusive effect of the state court judgment.  In addition, she contends that the position of the Plaintiffs

in bringing their claim under 11 U.S.C. § 523(a)(2) is not substantially justified, for which reason she

counterclaims for costs and attorney's fees under § 523(d).  The Plaintiffs have not answered the

counterclaim.

With regard to specifying the incidents of fraud that serve as the basis for Plaintiffs' demands for

relief under § 523(a)(2), the complaint states only as follows:

> 11.    The [Plaintiffs'] Claims arise from a 2003 transaction
> whereby the [Plaintiffs] purchased an inn located in Rockingham,
> Vermont (the "Inn") from [Morency] and Paul Florindo ("Florindo") for
> $1,245,000 (the "Purchase Price"). . . .

> 12.    The [Plaintiffs'] decision to purchase the Inn for the
> Purchase Price was based on their belief that the Inn generated certain
> levels of revenue and maintained certain occupancy rates.  These beliefs
> came from documents which were either created by [Morency] and
> Florindo, or by third parties based on information that [Morency] and
> Florindo provided.

> 13.    [Morency] and Florindo falsified information related to
> the Inn's revenues and value for the purpose of fraudulently causing the

> [Plaintiffs] to pay the Purchase Price which was, in fact, greatly in excess
> of the Inn's true value. . . .
>
> 19.    The Vermont Supreme Court has found that [Morency]
> made false representations regarding the Inn's occupancy and
> revenues, and that [Morency's] actions constituted fraud.

Complaint, ¶¶ 11-13, 19.  The complaint nowhere specifies precisely when and how Morency made the

representations in question and how they were false.  However, the Plaintiffs attached to the complaint

a copy of the decision of the Vermont Supreme Court on the parties' cross appeals from the Judgment

(the "Appellate Decision"), and that decision indicates that the Judgment is based on proof as to one or

both of two allegations of fraud against Morency.  In the first, she is alleged to have signed tax returns

for 2001 and 2002 that overstated the Inn's gross income for those years, which returns were supplied

through a broker to the Plaintiffs and induced them to purchase the Inn.  In the second, Morency is

alleged to have falsified certain of the Inn's guest-information and room-assignment records to

overstate the Inn's occupancy rates for 2001 or 2002; these falsified records were in turn supplied to a

real estate agent, who incorporated the false information in a sales brochure that misrepresented the

Inn's occupancy rates, which brochure was supplied to and relied on by the Plaintiffs.

The Plaintiffs next moved for summary judgment on the strength of the preclusive effect of their

state court judgment.  After a hearing, the Court denied this motion, stating:

> The Motion relies entirely on collateral estoppel to establish Plaintiffs'
> right to judgment under section 523(a)(2)(A), but collateral estoppel is
> unavailable because at least one element of a cause of action under
> section 523(a)(2)(A) was neither actually determined by the Vermont
> judgment nor necessary to that judgment.  Section 523(a)(2)(A) requires
> that the alleged misrepresentation be made "with intent to induce the
> plaintiff to rely on the misrepresentation." *Palmacci v. Umpierrez*, 121
> F.3d 781, 786 (1st Cir. 1997).  The jury instruction in the Vermont action
> included no such requirement.  In addition, the judgment was vacated
> on appeal and remanded and is not presently a final judgment.

The Plaintiffs then moved for reconsideration of the order denying summary judgment, and the Court

denied reconsideration.  The parties then submitted the joint pretrial memorandum that the Court had

required of them, which statement included (among other things) a recitation of certain facts that are not in dispute.

On the eve of trial, the Plaintiffs filed a motion entitled Motion for Entry of Judgment, seeking judgment under § 523(a)(2)(A) and (B) on the basis of the issue-preclusive effect of the Vermont judgment.  At the start of the trial, the Court denied this motion without prejudice to consideration of the preclusion issue upon submission of the case at trial.

At trial, the Plaintiffs introduced into evidence only the Appellate Decision, the decision of the Vermont Supreme Court on the parties' cross appeals from the Judgment; having done this, the Plaintiffs rested their case.  Morency then presented evidence of her own in the form of the testimony of three witnesses and related documents.  The Plaintiffs objected to the entry of any evidence by Morency as irrelevant, arguing that any case she might present is precluded by the issue-preclusive effect of the Judgment.  The Court admitted Morency's evidence subject to later determination of the preclusive effect of the Vermont judgment as to the issues presented in this proceeding.  After trial, each party submitted a post-trial brief, whereupon the Court took the matter under advisement.  In their post-trial brief, the Plaintiffs made clear that they are relying exclusively on the Judgment and its preclusive effect.

**FINDINGS OF FACT**

The facts and evidence were presented in three stages:  certain agreed-upon facts that the parties set forth in the Joint Pretrial Memorandum; the Appellate Decision, *Follo et al. v. Florindo and Morency et al.*, 2009 VT 11, 185 Vt. 390, 970 A.2d 1230 (2009), which the Plaintiffs submitted in large part for what it discloses about the Judgment, which is the basis of the Plaintiffs' case; and the evidence

submitted by Morency, some of which pertains to the status and determinative effect of the Judgment.[1]

I will set forth the agreed facts as they were articulated by the parties, then set forth what the Appellate

Decision indicates about the judgment it reviewed and the current posture of that judgment, and then

set forth the additional evidence Morency has adduced regarding the status and preclusive effect of the

Judgment.  Because the Plaintiffs rely exclusively on the Judgment and its preclusive effect, and I find

these insufficient to warrant entry of judgment for the Plaintiffs, I need not make further findings.

      a.     **Agreed Facts**

     The following enumerated paragraphs constitute what the parties, in the Joint Pretrial

Memorandum, identified as "the agreed upon facts which require no proof at trial."

     1.     The Plaintiffs' claim against Morency arises from a 2003 transaction whereby the

Plaintiffs purchased an inn and an adjoining cottage located in Rockingham, Vermont (the "Inn") from

Morency and a Paul Florindo ("Florindo") for $1,245,000 (the "Purchase Price").

     2.     Morency was the majority owner, president, and treasurer of the entity which held the

Inn, Cranberry Farms LLC.

     3.     Morency owned 51 percent of the Inn and Florindo owned 49 percent.[2]

     4.     The Inn's employee reported to Morency, and Morency wrote checks to the employee

in payment.

     5.     Prior to her ownership of the Inn, Morency owned an interest in a family-owned floor

covering company and also owned a rental property together with Florindo.

---

[1] The balance of Morency's evidence goes to the merits of the complaint as if these were being litigated anew.
However, the Plaintiffs have made no attempt to litigate the merits anew, and they rely exclusively on issue
preclusion.  Their case stands or falls on the issue preclusive effect of the Judgment.

[2] There is an unexplained discrepancy between recited facts in paragraphs 2 and 3:  the former states that the Inn
was owned by Cranberry Farms LLC, the latter that the Inn was owned directly by Morency and Florindo.
Fortunately the discrepancy has no bearing on the outcome.

6.       Follo's decision to purchase the Inn for the Purchase Price was based on their [sic] belief

that the Inn generated certain levels of revenue and maintained certain occupancy rates.

7.       Specifically, Follo employed a "gross revenue multiplier" approach to calculating

appropriate sales prices for inns.

8.       The sales brochure for the Inn included a profit and loss statement for the year 2001,

which reflected $226,000 in sales and net income of $150,000.

9.       The sale of the Inn to Follo closed in March, 2003.

10.      In 2004, Follo filed a complaint against Florindo, Morency, Cranberry Farm LLC, PSFM,

Inc., and the real estate agents in the Windham Superior Court [Docket No. 110-2-04 Wmcv], seeking,

*inter alia*, damages based upon common law fraud and statutory fraud.

11.      After six days of trial and four hours of deliberation, a jury in the Windham Count

Superior Court awarded a judgment in favor of Follo and against Florindo and Morency for common-law

fraud and violations of the Vermont Consumer Fraud Act.

12.      Morency appealed the Judgment, and the Plaintiffs cross-appealed the issue of punitive

damages.

13.      On April 5, 2010 (the "Petition Date"), Morency filed a voluntary petition for relief under

Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq*. in the United States Bankruptcy Court for the

District of Massachusetts.  Pursuant to § 362 of the Bankruptcy Code, the Vermont action was stayed on

the Petition Date.

**b.       The Appellate Decision**

The Appellate Decision is the only evidence the Plaintiffs have submitted of the Judgment.  The

Plaintiffs have not submitted the Judgment itself, the docket of the Vermont trial court proceeding or of

the appeal, the jury instructions, the trial transcript, the relevant exhibits, or the complaint in the

Vermont action.[3]  This court's ability to determine the status of the Judgment, the issues it decided, and

the necessity of the decision of any given issue to the Judgment is, except for the agreed facts in

paragraphs 11 and 12 above, limited entirely to what may be gleaned from the Appellate Decision.  The

Appellate Decision, a decision by the Supreme Court of Vermont on the parties' cross-appeals from the

judgment in the Vermont action, indicates the following relevant facts about that action and the

judgment entered therein.

In their amended complaint against Morency and others in the Vermont action, the Plaintiffs

stated a variety of claims, but after trial and before the matter went to the jury, the Plaintiffs dropped all

claims except two:  those for common law fraud and those under Vermont's Consumer Fraud Act (the

"CFA").  With respect to the substance of the Plaintiffs' claims under the CFA, the Appellate Decision

says virtually nothing.[4]  It does not supply the jury instruction, indicate the elements of a claim under the

CFA, indicate the relief to which the Plaintiffs were or might be entitled under the CFA, specify the facts

that the Plaintiffs alleged to state a claim under the CFA, or indicate the proof that was adduced to

establish the Plaintiffs' entitlement to relief under the CFA.  The Appellate Decision does not even

supply a citation indicating where the CFA may be found in Vermont's statutes.

With respect to the substance of the Plaintiffs' claims against Morency for common law fraud,

the Appellate Decision indicates that those claims were based on two independent allegations.  In the

first, she is alleged to have signed tax returns for 2001 and 2002 that overstated the Inn's gross income

for those years, which returns were supplied through a broker to the Plaintiffs and induced them to

purchase the Inn.  In the second, Morency is alleged to have falsified certain of the Inn's written guest-

---

[3] In their post-trial brief, the Plaintiffs state (at p. 6) that they entered into evidence the Judgment.  That is incorrect:  they have not entered the Judgment into evidence.  Later (at p. 10) they advance an argument that relies on the specific jury instructions given by the Superior Court, but the Plaintiffs have not introduced those instructions into evidence.
[4] Morency and Florindo argued on appeal that the evidence did not support the verdicts against them under the CFA, but the Vermont Supreme Court ruled that the issues had not been properly preserved for appeal and therefore did not address the substance or merits of those counts.

information and room-assignment records to overstate the Inn's occupancy rates for 2001 or 2002;[5]

these falsified records were in turn supplied to a real estate agent, who incorporated the false

information in a sales brochure that misrepresented the Inn's occupancy rates, which brochure was

supplied to and relied on by the Plaintiffs.

Before submitting the common Law fraud and CFA counts to the jury, the trial court granted a

motion by the defendants to exclude punitive damages for common law fraud as a matter of law.  The

court then charged the jury.  With respect to common law fraud, the trial court's instruction stated, in

part:

> In order to prove fraud, plaintiffs must demonstrate by clear and
> convincing evidence each of the following essential elements.  One, that
> defendants misrepresented an existing fact which affected the essence
> of the transaction with plaintiffs or knowingly allowed another to make
> such a representation on defendants' behalf; two, that defendants did
> so intentionally; three, that the misrepresentation was false when made
> and known at the time to be false by a defendant, or that the
> representation was recklessly made as being within the defendants'
> own knowledge without defendant in fact knowing whether it was true
> or not.

Except for a further instruction as to the measure of damages (at ¶ 51 of the Appellate Decision), the

Appellate Decision does not reproduce or otherwise specify any other jury instruction that was given as

to the count for common law fraud or the count under the CFA.

After deliberation, the jury returned a verdict against Florindo and Morency for common law

fraud and for "consumer fraud" under the CFA and awarded damages to the Plaintiffs in the amount of

$645,000.  Morency then moved for remittur of the damages award.  The trial court allowed the motion,

remitted the damages to $295,000, and entered final judgment against Morency and Florindo in that

amount plus prejudgment interest, costs, and attorney's fees.  The Appellate Decision does not indicate

---

[5] The Appellate Decision is unclear as to which year's occupancy rate Morency is alleged to have falsified.  In ¶ 31, the decision indicates that the Plaintiffs relied on the brochure's false occupancy information for 2001; but in ¶ 41, the Vermont Supreme Court determined that the trial court record contained evidence to support this allegation of fraud because, at trial, Morency could not explain certain discrepancies in the Inn's *2002* records.

what portion of the awarded damages, including prejudgment interest, costs, and attorney's fees, is

attributable to each or both of the two counts on which the judgment is predicated.  Nor does it indicate

whether the verdict for common law fraud was based on the allegation against Morency of false tax

returns, or the allegations against her of false occupancy records, or both.

Morency and Florindo appealed to the Vermont Supreme Court on various grounds, and Follo

cross-appealed from the remittur order and from the exclusion of punitive damages.   On January 23,

2009, the Vermont Supreme Court issued the Appellate Decision.  In that decision, it rejected the

defendants' appeals and, in doing so, determined that the trial record contained evidence on which the

jury could reasonably have returned the verdicts it did against Morency.[6]  The Vermont Supreme Court

also rejected Follo's challenge to the remittur order but held that punitive damages should not have

been excluded as a matter of law and should instead have been submitted to the jury.  The Vermont

Supreme Court accordingly remanded the action to the trial court for a jury determination of the

punitive damages, if any, to be awarded on the count for common law fraud.

c.       **Further Findings Regarding Preclusive Effect of Judgment**

Morency introduced into evidence an order that the Superior Court entered after remand of the

Vermont action to that court.  The order is entitled "Order Deferring Punitive Damages for Jury

Determination Following Defendant Florindo's Default and Clarifying Scope of Review" (the "Order After

Remand"), is dated February 16, 2010, and bears a stamp indicating that it was entered on the docket

the next day.  The Order After Remand includes recitations of procedural history and of reasons

---

[6] The Plaintiffs contend that the Vermont Supreme Court made "findings" of various facts.  This mischaracterizes
the record.  On appeal, where Morency had argued in relevant part that the evidence did not support the verdict
as to common law fraud, the Vermont Supreme Court determined that the trial record, when read in the light most
favorable to the jury's verdict and to the Plaintiffs, included sufficient evidence and a sound basis for the jury's
verdict.  The Vermont Supreme Court did not itself make findings or even rule that the jury's verdict was
*necessitated* by the evidence.

supporting decisions of the court.  It sets forth the following facts that bear upon the preclusive effect of

the Judgment.

First, after remand to the Superior Court, the Plaintiffs moved for entry of separate final

judgment as to fewer than all claims in that action under V.R.C.P. 54(b) pending a separate

determination of punitive damages, but the court denied that motion and, in the Order After Remand,

determined that there was no basis for reopening the denial of that motion.  I have no evidence that

judgment in any form has since entered in the Vermont action.

Second, the Superior Court held that the remand order does not include a requirement to try

the issue of exemplary damages under the CFA.  Rather, the remand is limited to trying the issue of

punitive damages under the count for common law fraud.  In its discussion of this issue, the Superior

Court indicated that, by affirming the verdict for consumer fraud, the Vermont Supreme Court had

upheld the award of attorney's fees.  From this I find that the attorney's fee portion of the Judgment

entered on the CFA count, albeit not necessarily exclusively on that count.  I further conclude that any

right the Plaintiffs' may have to punitive damages has not yet been adjudicated and arises, if at all,

under the common law fraud count.

Third, the Superior Court held that the Vermont Supreme Court's opinion does not establish

that Morency acted with "malice" as a matter of law; rather, on remand, "the jury must be further

instructed that it will have to be convinced by the evidence that Defendant Morency acted with malice

as a pre-condition to any further consideration of punitive damages."  Order After Remand, Defendant's

Ex. 7, p. 4.  In the Appellate Decision, the Vermont Supreme Court had stated that "[w]e require a

showing that defendants acted with actual malice before we allow the issue of punitive damages to go

to a jury," and it had defined the requisite malice as follows:  "Malice is not established by proof of

intentional, wrongful, or even illegal conduct alone; it requires, additionally, proof sufficient to support

an inference of bad motive" (internal quotations omitted).  The Superior Court construed the Appellate

Decision as having determined that the issue of Morency's malice itself, and not merely the

quantification of punitive damages such malice might warrant, needed to go to the jury.  The Superior

Court thus rejected the Plaintiffs' position on that issue, which was that the Appellate Decision had

determined that the necessary malice had already been established.  In so concluding, the Superior

Court stated:

> As Defendant Morency persuasively argues, based on this Court's
> instructions, the jury's verdict against her could have resulted in a
> determination of fraud in the absence of any culpable malice that would
> have justified punitive damages.

Order After Remand, Defendant's Ex. 7, pp. 2-3.  On the basis of this statement, I find that the Superior

Court's jury instruction on common law fraud at trial had been one that permitted a verdict against

Morency for common law fraud without proof of malice.  And on the basis of the above rulings of the

Superior Court, I find that the issue of whether Morency acted with malice has not been adjudicated.


**JURISDICTION**

The matter before the court is a complaint under 11 U.S.C. § 523(a) to determine the

dischargeability of a debt.  The matter arises under the Bankruptcy Code and in a bankruptcy case and

therefore falls within the jurisdiction given the district court in 28 U.S.C. § 1334(b) and, by a standing

order of reference,[7] referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a).  It is a core

proceeding within the meaning of 28 U.S.C. § 157(b)(1).  28 U.S.C. § 157(b)(2)(I) (core proceedings

include proceedings to determine the dischargeability of a particular debt).  The bankruptcy court

accordingly has authority to enter final judgment.

---

[7] The order of reference is codified in the district court's local rules at L.R. 201, D. Mass.

**DISCUSSION**

a.    **The Requirements of 11 U.S.C. § 523(a)(2)(A) and (a)(2)(B).**

The Plaintiffs seek a determination that their claim against Morency is excepted from discharge

under 11 U.S.C. § 523(a)(2)(A) and (a)(2)(B).  As creditors seeking a determination of ondischargeability,

the Plaintiffs bear the burden of proving that their judgment against Morency comes squarely within an

exception enumerated in 11 U.S.C. § 523(a), and they must prove their case by a preponderance of the

evidence.  *Grogan v. Garner*, 498 U.S. 279, 291 (1995); *Palmacci v. Umpierrez,* 121 F.3d 781, 787 (1st Cir.

1997).  Accordingly, with respect to any count under a subsection of § 523(a), if the Plaintiffs fail to

establish any one necessary element by a preponderance of the evidence, the court should, without

more, reject their claim under that subsection.  *Palmacci*, 121 F.3d at 787-88.

Subsection 523(a)(2)(A) excepts from discharge a debt for "money, property, services, or an

extension, renewal, or refinancing of credit, to the extent obtained, by false pretenses, a false

representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial

condition."  11 U.S.C. § 523(a)(2)(A).  This language expressly excludes from § 523(a)(2)(A) any

statement "respecting the debtor's or an insider's financial condition."  Within § 523(a)(2), the special

case of statements respecting the debtor's or an insider's financial condition is governed by subsection

(a)(2)(B), which subjects such statements to different requirements for exception from discharge.[8]  See

11 U.S.C. § 523(a)(2)(B)(ii) (excepting from discharge certain "statements respecting the debtor's or an

insider's financial condition").  Subsections (a)(2)(A) and (a)(2)(B) are therefore mutually exclusive.

The Bankruptcy Code does not define "statement respecting financial condition," and there is

disagreement among courts about the breadth of this term.  See *In re Kosinski*, 424 B.R. 599, 609-610

---

[8]*Rose v. Lauer (In re Lauer)*, 371 F.3d 406, 413 (8th Cir. 2004) ("Subsections 523(a)(2)(A) and (B) are mutually exclusive.");  *Middlesex Savings Bank v. Flaherty (In re Flaherty)*, 335 B.R. 481, 490 (Bankr. D. Mass.  2005) ("The exception to discharge under § 523(a)(2)(A) does not deal with deception by means of a statement relating to the debtor's or an insider's financial condition, which is the subject of section 523(a)(2)(B).").

(BAP 1st Cir. 2010) (collecting cases).  However, the courts generally agree that the term encompasses a statement regarding an entity's income flow or ability to generate income.  *In re Kosinski*, 424 B.R. at 609-610 (holding that a "statement of financial condition" for purposes of paragraph (a)(2)(B) denotes a representation of an entity's overall net worth, overall financial health, income flow, or ability to generate income); *In re Joelson*, 427 F.3d 700, 714 (10th Cir. 2005) (Statements respecting the debtor's or an insider's financial condition "are those that purport to present a picture of the debtor's overall financial health."  "[S]uch statements need not carry the formality of a balance sheet, income statement, statement of changes in financial position, or income and debt statement.  What is important is not the formality of the statement, but the information contained within it—information as to the debtor's or insider's overall net worth or overall income flow."); *Bal-Ross Grocers, Inc. v. Sansoucy (In re Sansoucy)*, 136 B.R. 20, 23 (Bankr. D. N.H. 1992) (a "statement of a debtor's or insider's financial condition" as used in § 523(a)(2)(B) means a balance sheet and/or profit and loss statement or other accounting of an entity's overall financial health and not a mere statement as to a single asset or liability).

In order to establish that a debt is excepted from discharge under § 523(a)(2)(A) as one arising from a false representation, the Plaintiffs must show by a preponderance as to each count asserted that: (1) the debtor made a false representation; (2) she did so knowingly or with reckless disregard of the truth; (3) she made the misrepresentation with intent to deceive the Plaintiffs and to induce them to rely upon it; (4) they did rely upon it; (5) their reliance was justifiable; and (6) their reliance caused pecuniary loss.  *Palmacci*, 121 F.3d at 786; *In re Burgess*, 955 F.2d 134, 139 (1st Cir. 1992) (as to elements other than reasonableness or justifiability of reliance).  The false representation must be "other than a statement respecting the debtor's or an insider's financial condition."  11 U.S.C. § 523(a)(2)(A).   In order to establish that a debt is excepted from discharge under § 523(a)(2)(B), the Plaintiffs must show that (1) the debt is one for money obtained by (2) use of a statement in writing (3)

that is materially false, (4) respecting the debtor's or an insider's financial condition, (5) on which the

creditor to whom the debtor is liable for such money reasonably relied, and (6) that the debtor caused

to be made  or published with intent to deceive.  11 U.S.C. § 523(a)(2)(B).

b.      **Collateral Estoppel**

The Plaintiffs seek to establish the various elements of subsections (a)(2)(A) and (a)(2)(B) by

collateral estoppel, also known as issue preclusion.  The principles of collateral estoppel apply in

nondischargeability proceedings.  *Grogan v. Garner*, 498 U.S. 279, 284-85, 11 S.Ct. 654, 658 (1991).

Under the full faith and credit statute, 28 U.S.C. § 1738, the preclusive effect of a state court judgment

in a subsequent federal proceeding generally is determined by the preclusion law of the state in which

judgment was rendered.  *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380,

105 S.Ct. 1327, 1331-32 (1985); *McCrory v. Spigel (In re Spigel)*, 260 F.3d 27, 33 (1st Cir. 2001).   The

judgment at issue was rendered by a court of the state of Vermont.  The Plaintiffs have not identified

Vermont's requirements for collateral estoppel or attempted to show how each is satisfied for each

issue they seek to establish by preclusion.

The Vermont Supreme Court has identified six requirements for the application of collateral

estoppel to a particular issue.  Many of the cases that address this issue mention only five of these:

> [P]reclusion should be found only when the following criteria are met:
> (1) preclusion is asserted against one who was a party or in privity with
> a party in the earlier action; (2) the issue was resolved by a final
> judgment on the merits; (3) the issue is the same as the one raised in
> the later action; (4) there was a full and fair opportunity to litigate the
> issue in the earlier action; and (5) applying preclusion in the later action
> is fair.

*Trepanier v. Getting Organized, Inc.*, 155 Vt. 259, 265, 583 A.2d 583, 587 (1990).  Expanding on the

fourth and fifth requirements, the court stated:

> No one simple test is decisive in determining whether either of the final
> two criteria are present; courts must look to the circumstances of each
> case.  Among the appropriate factors for courts to consider are the type

14

> of issue preclusion, the choice of forum, the incentive to litigate, the
> foreseeability of future litigation, the legal standards and burdens
> employed in each action, the procedural opportunities available in each
> forum, and the existence of inconsistent determinations of the same
> issue in separate prior cases.  In short, in order to satisfy the final two
> criteria, the party opposing collateral estoppel must show the existence
> of circumstances that make it appropriate for an issue to be relitigated.

*Id.*, 155 Vt. at 265, 583 A.2d at 587-88 (internal citations omitted).  In other cases, the Vermont Supreme

Court has identified a further requirement:  preclusion applies only to issues "necessarily and essentially

determined in a prior action."  *In re P.J.*, 185 Vt. 606, 609, 969 A.2d 133, 137 (2009), quoting from *State

v. Pollander*, 167 Vt. 301, 305, 706 A.2d 1359, 1361 (1997); *Berisha v. Hardy*, 144 Vt. 136, 138, 474 A.2d

90, 91 (1984); *American Trucking Ass'ns v. Conway*, 152 Vt. 363, 369, 566 A.2d 1323, 1327 (1989) (issue

preclusion appropriate only "where that issue was necessary to the resolution of the [previous] action").

> It is not sufficient for a party to assert that an issue could have been the
> basis of a prior judgment. The Restatement (Second) of Judgments
> explains: "If a judgment of a court of first instance is based on
> determinations of two issues, either of which standing independently
> would be sufficient to support the result, the judgment is not conclusive
> with respect to either issue standing alone."  *Restatement (Second) of
> Judgments* § 27 cmt. i (1982).

*Pollander*, 167 Vt. at 305, 706 A.2d at 1361.

"The party contending that an issue has been conclusively litigated and determined in a prior

action has the burden of proving that contention."  *Restatement (Second) of Judgments* § 27 cmt. f

(1982).  However, where the party opposing preclusion contends that preclusion is inappropriate

because either she did not have a full and fair opportunity to litigate the issue in the earlier action or

applying preclusion in the later action would be unfair, that party bears the burden of proof on those

issues.  *Trepanier v. Getting Organized, Inc.*, 155 Vt. at 265, 583 A.2d at 587-88.

### i.   Identity of Parties

Two of the six requirements apply uniformly to each issue from the earlier action that the

Plaintiffs seek to establish by collateral estoppel:  the requirements of identity of the party to be bound

and of a valid final judgment.  The former is undisputedly established here:  Morency was a party to the

earlier action and is the defendant in this proceeding.

### ii.        Decided by a Valid Final Judgment

The latter requirement is an issue I decided earlier in this case, at the summary judgment stage.

The law requires that the issue in question have been resolved by a final judgment on the merits.  On

Plaintiffs' motion for summary judgment, I ruled that, because the Judgment was vacated on appeal and

the matter remanded for further proceedings to quantify damages, there no longer existed a final

judgment, and collateral estoppel was therefore unavailable.  The material facts are no different now

than were presented on summary judgment, and the Plaintiffs have offered no law, from Vermont or

elsewhere, under which a judgment, after being remanded for further proceedings, was nonetheless

given issue-preclusive effect in another proceeding.  Accordingly, the earlier ruling is the law of the case

and normally would stand.

However, I am mindful that, as the Plaintiffs point out, a judgment did enter, that the Judgment,

as far as it went, was affirmed against each challenge that Morency asserted on appeal, and that on

remand the damages can only increase.  The decision of the trial court was not tentative, and a full

opportunity for appellate review has been afforded and exhausted.  For most purposes (such as appeal,

enforceability, merger, and bar) the requirement of a final judgment still would not be satisfied here.

However, for purposes of collateral estoppel, I have recently become aware, the *Restatement (Second)*

*of Judgments* recognizes some flexibility.  Hence the following comment on the requirement of finality

for purposes of issue preclusion:

> *g. Criteria for determining finality in the application of issue preclusion.*
> The requirement of finality of judgment is interpreted strictly . . . when
> bar or merger is at stake. This is natural when it is considered that the
> effect of a judgment as bar or merger is to "extinguish" a claim, and,
> when there is merger, to create a new claim based on the judgment
> itself. . . . Usually there is no occasion to interpret finality less strictly
> when the question is one of issue preclusion, that is, when the question

is whether decision of a given issue in an action may be carried over to a second action in which it is again being litigated. . . .  But to hold invariably that that kind of carry-over is not to be permitted until a final judgment in the strict sense has been reached in the first action can involve hardship--either needless duplication of effort and expense in the second action to decide the same issue, or, alternatively, postponement of decision of the issue in the second action for a possibly lengthy period of time until the first action has gone to a complete finish. In particular circumstances the wisest course is to regard the prior decision of the issue as final for the purpose of issue preclusion without awaiting the end judgment.  See Illustrations 1-3. Before doing so, the court should determine that the decision to be carried over was adequately deliberated and firm, even if not final in the sense of forming a basis for a judgment already entered.  Thus preclusion should be refused if the decision was avowedly tentative.  On the other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion.  The test of finality, however, is whether the conclusion in question is procedurally definite and not whether the court might have had doubts in reaching the decision.

*Restatement (Second) of Judgments* § 13 cmt. g (1982).  This comment is new to the *Restatement (Second)* and follows decisions from the Second and First Circuits.[9]  The Supreme Court of Vermont does not appear to have addressed this issue, but given that court's demonstrated inclination to follow the *Restatement (Second) of Judgments* in matters of issue preclusion,[10] I am persuaded that it would likely follow comment g.  Notwithstanding my earlier ruling, I therefore conclude that the Judgment satisfies the finality requirement for purposes of issue preclusion.

### iii.    Necessity of the Determination to the Judgment

In Vermont law, preclusion applies only to issues "necessarily and essentially determined in a prior action."  *In re P.J.*, 185 Vt. 606, 609, 969 A.2d 133, 137 (2009).  Here, the judgment rested on two

---

[9] *Restatement (Second) of Judgments* § 13 reporter's note re cmt. g (1982).  See *Lummus Co. v. Commonwealth Oil Ref. Co.*, 297 F.2d 80, 87-90 (2d Cir.1961), cert. denied, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962) (see authorities cited); *Zdanok v. Glidden Co.*, 327 F.2d 944, 955 (2 Cir.1964), cert. denied, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964); *Sherman v. Jacobson*, 247 F.Supp. 261, 267-72 (S.D.N.Y.1965); *Bee Machine Co. v. Freeman*, 131 F.2d 190 (1st Cir.1942), aff'd 319 U.S. 448, 63 S.Ct. 1146, 87 L.Ed. 1509 (1943), reh. denied, 320 U.S. 809, 64 S.Ct. 27, 88 L.Ed. 489 (1943).
[10] *See, e.g, Pollander*, 167 Vt. at 305, 706 A.2d at 1361.

independent bases:  common law fraud and the CFA.  To establish the nondischargeability of this debt

under § 523(a)(2), the Plaintiffs rely on elements proven in support of the common law fraud count in

Vermont.  But, from what the Plaintiffs have proven about the proceedings in Vermont, the damages

awarded for common law fraud are no more than the damages awarded for violation of the CFA.[11]  The

whole of the Judgment could therefore have been based on the count for violation of the CFA.  On

appeal, Morency sought review of both bases of judgment; and the Vermont Supreme Court did review

the common law fraud issues but declined to review the CFA issues, stating that the latter had not been

properly preserved for appeal.

　　　　With regard to whether an issue is necessary or essential to a judgment, the Vermont Supreme

Court has stated:

> It is not sufficient for a party to assert that an issue could have been the
> basis of a prior judgment.  The *Restatement (Second) of Judgments*
> explains: "If a judgment of a court of first instance is based on
> determinations of two issues, either of which standing independently
> would be sufficient to support the result, the judgment is not conclusive
> with respect to either issue standing alone."  *Restatement (Second) of
> Judgments* § 27 cmt. i (1982).

Pollander, 167 Vt. at 305, 706 A.2d at 1361.  On the basis of this pronouncement alone, the common law

fraud issues would not be deemed necessary to the Judgment.  However, the *Restatement (Second) of

Judgments* includes another relevant comment concerning the effect of an appeal:

> *o.  Effect of an appeal.* . . .
> If the judgment of the court of first instance was based on a
> determination of two issues, either of which standing independently
> would be sufficient to support the result, and the appellate court
> upholds both of these determinations as sufficient, and accordingly
> affirms the judgment, the judgment is conclusive as to both
> determinations. In contrast to the case discussed in Comment i, the
> losing party has here obtained an appellate decision on the issue, and
> thus the balance weighs in favor of preclusion.

---

[11] If anything, the damages for common law fraud may be less than for violation of the CFA, the Plaintiffs having
made no showing that attorney's fees could have been granted for common law fraud, especially where no
instruction was given for punitive damages.

> If the appellate court upholds one of these determinations as sufficient but not the other, and accordingly affirms the judgment, the judgment is conclusive as to the first determination.
>
> If the appellate court upholds one of these determinations as sufficient and refuses to consider whether or not the other is sufficient and accordingly affirms the judgment, the judgment is conclusive as to the first determination.

*Restatement (Second) of Judgments* § 27 cmt. o (1982).  The present case is governed by the third quoted paragraph of this comment:  on appeal, Morency sought review of both determinations, and the appellate court upheld the determination of common law fraud and refused to consider the other.  The *Restatement (Second) of Judgments* would accordingly view the judgment as conclusive as to common law fraud, and I believe the Vermont Supreme Court would rule accordingly and hold that the issues necessary to common law fraud were necessary to the Judgment.

The necessity analysis is not yet complete.  The common law fraud verdict itself has two possible bases:  the tax return and the occupancy information that was published in the brochure.  In order to return a verdict for the Plaintiffs, the jury needed to find that Morency committed fraud in one or the other of these ways.  There is no way of knowing whether the jury found against her on one basis or the other or both.  Applying the *Restatement*'s comment i above, neither would be deemed necessary to the judgment.  However, on appeal, the Vermont Supreme Court reviewed both bases independently and upheld the verdict as to both.  This is not a situation that either the Vermont courts or the *Restatement (Second)* has anticipated.  I believe the Vermont Supreme Court would treat both as necessary to the Judgment, because the Judgment was undoubtedly based on at least one basis (and possibly both), and though I do not know which it was, I know that the basis, whichever it was, was reviewed and affirmed on appeal.  Following comment o above, that suffices.

iv.     **Identity of Issues**

The Plaintiffs must further show that each issue they would establish by preclusion is identical to

one that was decided by the earlier judgment.  To establish the specific issues that the Judgment

decided, the Plaintiffs cite to certain instructions on common law fraud that they contend were given to

the jury and to the requirements that, under Vermont law, would be required for a verdict under the

CFA.  Plaintiffs' Post-Trial Brief, pp. 3-4.  At trial, however, the Plaintiffs did not introduce the jury

instructions into evidence.  The only evidence I have of the jury instructions is the Appellate Decision,

which reproduces these only in part as follows:

> In order to prove fraud, plaintiffs must demonstrate by clear and
> convincing evidence each of the following essential elements.  One, that
> defendants misrepresented an existing fact which affected the essence
> of the transaction with plaintiffs or knowingly allowed another to make
> such a representation on defendants' behalf; two, that defendants did
> so intentionally; three, that the misrepresentation was false when made
> and known at the time to be false by a defendant, or that the
> representation was recklessly made as being within the defendants'
> own knowledge without defendant in fact knowing whether it was true
> or not.

These instructions fall short of meeting the requirements of § 523(a)(2)(A) in at least three

respects.  First, they do not filter out statements respecting the debtor's or an insider's financial

condition, as does § 523(a)(2)(A).  In fact, both possible bases of the common law fraud verdict were

statements respecting the debtor's or an insider's financial condition:  both the tax return and the

statements in the brochure about occupancy rates concerned the Inn's income and overall income

flow.[12]  These statements are therefore not governed by subsection (a)(2)(A).  Second, as I stated in the

order on summary judgment, § 523(a)(2)(A) requires that the alleged misrepresentation be made "with

intent to induce the plaintiff to rely on the misrepresentation," *Palmacci v. Umpierrez*, 121 F.3d 781, 786

---

[12] It is undisputed that the entity whose financial condition was at issue in the tax return and brochure was an
"insider" of Morency within the meaning of 11 U.S.C. § 101(31)(A).

(1st Cir. 1997), but I have no evidence that the jury instruction included any such requirement.[13]   Third, §

523(a)(2)(A) requires proof that the Plaintiffs relied on the representation and that their reliance was

justifiable.  *Palmacci*, 121 F.3d at 786; *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995)

(establishing need for justifiable reliance and contrasting it with reasonable).   I have no evidence that

any instruction was given as to reliance.   Even the instruction that the Plaintiffs contend was given

requires a showing only of "reasonable" reliance, a different standard than "justifiable."   *Id.*, 516 U.S. at

70, 116 S.Ct. at 444 (contrasting justifiable and reasonable reliance).

The Plaintiffs do not contend that the proof that needed to be adduced under the CFA helps

overcome any of these difficulties.   Nor does it.   The Plaintiffs contend that under the CFA, the jury was

required to find that "(1) there was a representation, practice, or omission likely to mislead the

consumer, (2) the consumer was interpreting the message reasonably under the circumstances, and (3)

the misleading effects were "material" and likely to affect the consumer's conduct or decision."   *Greene*

*v. Stevens Gas Service*, 177 Vt. 90, 97, 858 A.2d 238, 244 (2004); *Poulin v. Ford Motor Co.*, 147 Vt. 120,

124-25, 513 A.2d 1168, 1171-72 (1986).   There is no requirement here of reliance, much less justifiable,

or of specific intent to induce reliance.   In any event, I have no evidence as to how the jury was

instructed on the CFA count.   For these reasons, I conclude that the Plaintiffs have not established a

basis for exception from discharge under subsection (a)(2)(A).

The given instructions also fall short of establishing two requirements of subsection (a)(2)(B):

that the creditor's reliance on the false statement was reasonable; and that the debtor made or

published the false statement with intent to induce reliance.   11 U.S.C. § 523(a)(2)(B)(iii) and (iv).   The

Plaintiffs allege that the jury was instructed that a finding of reasonable reliance was necessary, but the

---

[13] Even the instruction that they contend was given does not include a requirement of intent to induce reliance.
And Vermont law does not appear to require a showing of intent to induce reliance.   See *Bennington Housing
Authority v. Bush*, 182 Vt. 133, 136, 933 A.2d 207, 210-11 (2007) ("An action for fraud and deceit will lie upon an
intentional misrepresentation of existing fact, affecting the essence of the transaction, so long as the
misrepresentation was false when made and known to be false by the maker, was not open to the defrauded
party's knowledge, and was relied on by the defrauded party to his damage").

Plaintiffs have submitted no evidence to support that allegation.  Moreover, although Vermont law

appears to require a showing of reliance, it does not appear to require that the reliance have been

reasonable.  In *Bennington Housing Authority v. Bush*, 182 Vt. at 136, 933 A.2d at 210-11, the Vermont

Supreme Court stated, with respect to reliance, only that fraud requires proof that the

misrepresentation "was relied on by the defrauded party to his damage"; it made no mention of a

reasonableness requirement.

    Likewise, the Plaintiffs have submitted no evidence that the jury was instructed that fraud

required a showing of intent to induce reliance.  No such requirement is present in Vermont law.  *Id*.

The Plaintiffs contend that the jury was in fact instructed with a requirement of intent to induce reliance

as follows:

> As regards to claims of fraudulent misrepresentation, the general rule is
> that one who intentionally misrepresents facts to induce another to
> enter into a contract may not defend by saying that the aggrieved party
> but for his own negligence might have discovered the wrong.

The Plaintiffs, however, have submitted no evidence that the jury was given this instruction.[14]  In any

event, this instruction does not require proof of intent to induce reliance to establish fraud.  It merely

states that when intent to induce reliance is shown, the defendant may not avail herself of a particular

defense.[15]  Therefore, even if this instruction were given, it would not establish that the jury was

required to find intent to induce reliance.


**c.    Conclusion as to Dischargeability**

    In summary, the Plaintiffs have failed to establish that the issues decided in the Vermont action

include all the issues they need to prevail under subsection (a)(2)(A) or (a)(2)(B).  Moreover, because the

record shows that the Judgment was based exclusively on statements about Morency's financial

---

[14] For this instruction, they cite an exhibit that the Plaintiffs submitted in support of their motion for summary judgment.  The exhibit is not part of the trial record.
[15] The Plaintiffs do no allege, and the record includes no evidence that, but for a finding of intent to induce reliance, Morency would have prevailed on the strength of the defense that this instruction would disallow.

condition, it establishes affirmatively that the Plaintiffs cannot prevail under subsection (a)(2)(A).   The

Plaintiffs having relied entirely on issue preclusion, judgment must therefore enter for Morency,

declaring that her debt to the Plaintiffs is not excepted from discharge.[16]

d.      **Costs and Fees under § 523(d)**

"[i]f a creditor requests a determination of dischargeability of a consumer debt under

subsection (a)(2) of this section, and such debt is discharged," § 523(d) of the Bankruptcy Code

sometimes permits the assessment of costs and attorney's fees against the plaintiff.  11 U.S.C. § 523(d).

Morency has made a demand for costs and fees under § 523(d).  A "consumer debt" is defined as a

"debt incurred by an individual primarily for a personal, family, or household purpose."  11 U.S.C. §

101(8) (defining "consumer debt" for purposes of title 11).  The debt in question is not a consumer debt.

Therefore, § 523(d) does not apply, and Morency's request must be denied.

e.      **Conclusion**

For the reasons set forth above, judgment will enter (i) declaring that the debt of Morency to

the Plaintiffs is not excepted from discharge and (ii) denying fees and costs under § 523(d).

Date:  April 2, 2013                              _____
                                                  Frank J. Bailey
                                                  United States Bankruptcy Judge

---

[16] In reaching this conclusion, I need not and do not address arguments Morency has made as to two other issues germane to the application of issue preclusion in Vermont law: whether (i) there was a full and fair opportunity to litigate the issue in the earlier action and (ii) applying preclusion in the later action is fair.  Neither need I address the problem posed by the impossibility, on the record before me, of determining what portion of the damages award is attributable to the fraud count.   Neither need I address the permissibility of the Plaintiffs' now advancing arguments under subsection 523(a)(2)(B) when they made no mention of that subsection in the Joint Pretrial Memorandum.