## UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**SUSAN C. MORENCY,**                     Chapter 7
     Debtor                            Case No. 10-13666-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**CARL FOLLO, FOLLO HOSPITALITY, INC.,**
**and CARPA REAL ESTATE, LLC,**
     Plaintiffs
v.                                        Adv. P. No. 10-1133

**SUSAN C. MORENCY,**
     Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matters before the Court are  two motions filed by Carl Follo, Follo Hospitality Inc. and Carpa Real Estate, LLC (collectively "Follo"): (1) a Motion to Amend Complaint Following Trial, and (2) a Motion for the Court to Take Judicial Notice of Jury Instructions. Susan C. Morency ("Morency" or the "Debtor") filed Oppositions to both Motions.

Follo commenced an adversary proceeding against Morency which has been pending for over five years.  Bankruptcy Judge Frank J. Bailey, following  (1) a trial on

1

August 17, 2011, (2) the issuance of a decision on April 2, 2013, *see* <u>Follo v. Morency (In re</u>

<u>Morency)</u>, No. 13-1133, 2013 WL 1342485 (Bankr. D. Mass. April 2, 2013), (3) the issuance

of a decision by the United States District Court for the District of Massachusetts, affirming

in part and remanding the matter to the bankruptcy court, *see* <u>Follo v. Morency</u>, 507 B.R.

421 (Bankr. D. Mass. 2014), (4) a status conference conducted by Judge Bailey on July 10,

2014, and (5) the filing by Follo and Morency of a "Joint Statement of Issues to be Briefed

and Proposed Briefing Schedule following Remand," as well as briefs, recused himself

from the adversary proceeding and the main case on May 22, 2015. The main case and

adversary proceeding, promptly and randomly, were assigned to this Court. This Court

conducted a status conference on June 18, 2015 at which the parties expressly consented to

this Court's determination of the foregoing Motions without further evidence, as well as

its consideration of the issues identified in the District Court's Memorandum and Order,

pursuant to which it remanded the matter to the bankruptcy court. *See* Fed. R. Bankr. P.

9028.

## II. PROCEDURAL BACKGROUND

A. <u>The State Court Litigation</u>

This adversary proceeding relates to the purchase of the Inn at Cranberry Farm and

a cottage (collectively, the "Inn") in Rockingham, Vermont by Follo from Morency, Paul

Florindo ('Florindo") and their related entities. Follo obtained a judgment against Morency

and Florindo for common law fraud and violations of the Vermont Consumer Fraud Act

in the Windham County Superior Court following six days of trial and four hours of jury

deliberation.  Both parties appealed the decision of the Superior Court to the Supreme

Court of Vermont, which issued a decision on January 23, 2009.  *See* <u>Follo v. Florindo</u>, 185

Vt. 390, 970 A.2d 1230 (2009).   The Vermont Supreme Court capsulized its ruling as

follows:

> Defendants Paul Florindo and Susan Morency appeal from a jury verdict and
> judgment against them for common-law fraud and violations of Vermont's
> Consumer Fraud Act in connection with their sale of a bed and breakfast
> business. Both defendants claim that the evidence did not support the
> verdict, that the jury instructions regarding common law and consumer
> fraud were plainly erroneous, and that the trial court's decision to preclude
> their expert witnesses from testifying was error. Defendant Florindo also
> contends that it was error for the trial court to allow plaintiff's expert witness
> and the jury to value the two parcels of property at issue as one parcel for
> purposes of the damages calculation. Defendant Morency claims further that
> plaintiff's closing argument at trial was prejudicial and improper. We affirm
> on all counts.
>
>  . . .  Plaintiff, Carl Follo, the purchaser and current operator of the bed and
> breakfast, cross-appeals on two issues. First, he claims error in the trial
> court's exclusion of punitive damages as a matter of law. Second, plaintiff
> argues that it was improper for the trial court to order remittitur of a portion
> of the jury award. We reverse the trial court's punitive-damages decision and
> affirm the remittitur order.

185 Vt. at 394.  The Vermont Supreme Court affirmed in part and reversed in part the

decisions of trial court and remanded for the jury's determination of punitive damages, if

any.  <u>Id.</u> at 417.

Following the decision of the Vermont Supreme Court, Morency, on April 5, 2010,

filed a Chapter 7 bankruptcy petition.  On May 14, 2010, Follo timely filed a two-count

Complaint against Morency under "11 U.S.C. § 523(a)(2)" and 11 U.S.C. § 523(a)(6).  Follo

has waived any claim to relief under 11 U.S.C. § 523(a)(6) by failing to pursue it.

3

B. <u>The Complaint, the Motion for Summary Judgment, and the Parties' Joint Pretrial Memorandum</u>

The Complaint contained no specific references to any subsection of § 523(a)(2), which provides exceptions to discharge under subsection § 523(a)(2)(A) for "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition," under § 523(a)(2)(B) for use of false written statements of financial condition made or published with intent to deceive upon which a creditor reasonably relied; and under § 523(a)(2)(C) for certain consumer debts or cash advances. As noted above, Follo set forth two counts in the Complaint; the Count under § 523(a)(2) referenced "False Representation and Actual Fraud by the Debtor."

On July 2, 2010, the bankruptcy court issued a Pretrial Order. Pursuant to that order, the parties were directed to file a memorandum including, among other things, brief statements of their respective cases. The Pretrial Order required the filing of any dispositive motion "no less than seven (7) business days prior to the date fixed for the filing of the Joint Pretrial Memorandum or the relief sought in such motions shall be deemed to have been waived."

On November 5, 2010, Follo filed a Motion for Summary Judgment, seeking the entry of judgment under § 523(a)(2)(A). Follo stated: "It is undisputed that the Vermont state courts have found that Morency committed common-law fraud and made intentional and reckless misrepresentations of material facts, which the Plaintiffs relied on in purchasing the Inn." Follo filed a Memorandum in support of the summary judgment

4

motion to which Follo attached, as Exhibit A, a portion of the jury instructions. Morency

opposed the Motion for Summary Judgment. On February 4, 2011, the bankruptcy court

denied the motion for a number of reasons, stating the following:

> The Motion relies entirely on collateral estoppel to establish Plaintiffs' right
> to judgment under section 523(a)(2)(A), but collateral estoppel is unavailable
> because at least one element of a cause of action under section 523(a)(2)(A)
> was neither actually determined by the Vermont judgment nor necessary to
> that judgment. Section 523(a)(2)(A) requires that the alleged
> misrepresentation be made "with intent to induce the plaintiff to rely on the
> misrepresentation." Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997).
> The jury instruction in the Vermont action included no such requirement. In
> addition, the judgment was vacated on appeal and remanded and is not
> presently a final judgment.

On February 15, 2011, Follo moved for reconsideration of the denial of the summary

judgment motion. The bankruptcy court denied the motion three days later.[1]

On April 12, 2011, in accordance with the Pretrial Order, the parties filed a 22-page,

---

[1] Judge Bailey stated:

The cited jury instruction does not require a showing of intent to induce
reliance; rather, it concerns the separate requirement of a showing that the
plaintiff reasonably relied on the misrepresentation. The jury instruction
merely states that, if the jury were to find that the defendant had made a
misrepresentation with intent to induce reliance, then the defendant could
not defend by arguing that the plaintiff's reliance was negligent, not
reasonable. It does not state that in order to find reasonable reliance, the
jury had to find that the misrepresentation had to be made with intent to
induce reliance. It does not require a finding a intent to induce reliance;
under the given instruction, reasonable reliance, and therefore fraud,
could be established without a finding of intent to induce reliance on the
misrepresentation.

The remainder of the arguments advanced in support of reconsideration
are simply attempts to advance anew arguments that have already been
advanced and rejected.

Joint Pretrial Memorandum.  In it, Follo disclosed that he intended to call two witnesses,

namely himself and Morency, and to introduce 76 exhibits into evidence.  In addition, the

parties set forth "agreed upon facts which require no proof at trial," including the

following:

1. The Plaintiffs' claim against Morency arises from a 2003 transaction
whereby the Plaintiffs purchased an inn and an adjoining cottage located in
Rockingham, Vermont (the "Inn") from Morency and a Paul Florindo
("Florindo") for $1,245,000 (the "Purchase Price").

2. Morency was the majority owner, president, and treasurer of the entity
which held the Inn, Cranberry Farms LLC.

3. Morency owned 51 percent of the Inn and Florindo owned 49 percent.

4. The Inn's employee reported to Morency, and Morency wrote checks to the
employee in payment.

5. Prior to her ownership of the Inn, Morency owned an interest in a
family-owned floor covering company and also owned a rental property
together with Florindo.

6. Follo's decision to purchase the Inn for the Purchase Price was based on
their [sic] belief that the Inn generated certain levels of revenue and
maintained certain occupancy rates.

7. Specifically, Follo employed a "gross revenue multiplier" approach to
calculating appropriate sales prices for inns.

8. The sales brochure for the Inn included a profit and loss statement for the
year 2001, which reflected $226,000 in sales and net income of $150,000.

9. The sale of the Inn to Follo closed in March, 2003.[2]

_____

[2] The remainder of the admitted facts pertain to the judgment, appeal and
bankruptcy filing which have been recounted above.  Parenthetically, Judge Bailey
noted "an unexplained discrepancy between recited facts, namely that in one paragraph
the parties indicated that the Inn was owned by Cranberry Farms LLC, and in another

Follo set forth the following "Statement of the Case":

> The purpose of §523(a)(2)(A) is to prevent a debtor from retaining the benefits of property obtained by fraudulent means and to ensure that the relief intended for honest debtors does not go to dishonest debtors. <u>See</u> Collier on Bankruptcy, Vol. 4, Sec. 523.08[1][a]. *As set forth above, Morency''s actions constitute false representations under §523(a)(2)(A).* In addition, the instant circumstances fulfill the other criteria of §523(a)(2)(A). Morency intended Follo to rely on her flase [sic]statements and the Follo [sic] relied on Morency's false representations. Folio's reliance on Morency false representations resulted in a loss of property to Follo [sic]

> Morency's conduct resulted in a loss of property to Follo in the form of payment in excess of the Inn's value. Follo relied on the representations of Morency and their reliance [sic] was *justifiable* under the circumstances. *Follo in this matter investigated the Inn's revenues and occupancy rates and obtained documents which were either created by Morency, based on information that Morency provided, and/or executed by Morency.* Follo could not have foreseen that such documents would contain falsified information. Follo's decision to buy the Inn for the Purchase Price was based on their belief [sic] that the Inn generated certain levels of revenue and maintained certain occupancy rates.

(emphasis supplied). The Statement of the Case espoused by Follo in the Joint Pretrial Memorandum mirrored the one advanced in Follo's Motion for Summary Judgment, namely entitlement to a finding that the debt evidenced by the Vermont judgment was nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). In her Statement of the Case, Morency set forth her view that the evidence submitted in the Vermont state court action was insufficient to satisfy the test applicable to § 523(a)(2)(A) set forth by the United States Court of Appeals for the First Circuit in <u>Palmacci v. Umpierrez</u>, 121 F.3d 781, 786 (1st Cir. 1997), because the elements of fraud under Vermont law are different than those required

---

that the Inn was owned directly by Morency and Florindo," adding "the discrepancy has no bearing on the outcome." 2013 WL 1342485, at *3, n.2.

by Palmacci.  She added:

> The Chapter 7 Trustee of Morency's bankruptcy estate has pursued a
> malpractice claim against Morency's trial attorney that has resulted in an
> approved settlement in the amount of $162,500.00, which represents the
> depletion of Morency's life savings to pay attorneys' fees to address the
> malpractice committed by her trial counsel.

On August 16, 2011, one day before trial was scheduled to commence, Follo filed a

a Motion in Limine to preclude the introduction of evidence "on any issue except on the

limited issue of whether the misrepresentations of Susan C. Morency  . . . was [sic] made

with the intent to induce reliance, referring to the bankruptcy court's decision denying

summary judgment because the Vermont state court had not actually determined that the

Defendants' misrepresentations had been made with the "intent to induce," a required

element under § 523(a)(2)(A).  *See* Palmacci v. Umpierrez, 121 F.3d at 786.  Follo also filed

a Motion for Entry of Judgment which, for the first time, contained an explicit request for

entry of judgment pursuant to 11 U.S.C. § 523(a)(2)(B), but contained no reference to any

applicable Federal Rule of Bankruptcy Procedure or Federal Rule of Civil Procedure.  Follo

reiterated arguments under § 523(a)(2)(A) in the Motion for Entry of Judgment.  In that

motion, with respect to § 523(a)(2)(B), Follo merely stated:

> Alternatively, all of the essential elements to establish the Plaintiffs' right to
> relief under Section 523(a)(2)(B) have likewise been satisfied by the Vermont
> Final Judgment. The Vermont Final Judgment established that the Defendant
> (i) executed and supplied tax returns and statements of occupancy in writing,
> (ii) which were materially false, (iii) respecting the financial condition of the
> Inn, (iv) on which the Plaintiffs reasonably relied, and (v) which the
> Defendant made or published with the intent to deceive by, inter alia, aiding
> in supplying false statements of occupancy to the Plaintiffs when they were
> deciding to purchase the Inn.  Follo v. Florindo et al., 970 A.2d 1230, 1244

(2009).

Follo did not elucidate in any way how the reference in the Vermont Supreme Court's decision satisfied the elements of a cause of action under § 523(a)(2)(B).

The bankruptcy court, one day after the conclusion of the trial on August 17, 2011, denied the motion "without prejudice to consideration of the preclusion issue upon submission of the case at trial." The bankruptcy court added: "This is essentially a dispositive motion in limine filed after the deadline for dispositive motions and without affording the defendant sufficient time to respond."

C. The Evidence Adduced at Trial

The trial commenced before Judge Bailey on August 17, 2011. Follo's counsel almost immediately rested following the submission of a single exhibit, namely the decision of the Vermont Supreme Court. He explained that the Motion for Entry of Judgment was filed as a trial motion, stating "[i]t wasn't any type of pre-trial motion. It's basically a motion for directed verdict . . . or directed finding."

Follo, Morency, and Florindo testified at the trial before Judge Bailey on August 17, 2011. Morency testified that she was not instrumental in preparing tax returns for the Inn. She indicated that she executed partial returns for the years 2000 and 2003, the years in which she and Florendo purchased and sold the Inn, respectively, and for the years in between. The returns, which were prepared by a retired IRS agent, were completed based upon information provided by Florindo. When she executed the 2001 tax return in mid-April 2002, she and Florindo had not discussed selling the Inn. She and Florinda decided

9

to sell the Inn in July of 2003 because her father, who had been diagnosed with cancer, had

reached the terminal stage of his illness.  Florindo and Morency  executed an "Exclusive

Right to Market Property Agreement" with Hospitality Consultants, LLC on July 18, 2002.

Morency executed the 2002  tax return in 2003 at a time when her father was gravely ill and

she was traveling to, and staying at, her family's home in Dartmouth, Massachusetts.

Morency and Florindo  also testified about the Guest Reservation Information forms

("Guest Forms") and Reservation forms ("Room Sheets").  The forms for 2001 through 2002

were stored in the basement of the Inn, while the 2003 materials were taken by Florindo for

purposes of preparing the tax returns for that year.  He made some of those forms available

to Follo after the commencement of the litigation in the Vermont state court.  *See* In re

Morency, No. 10-13666-JNF,  (Bankr. D. Mass. Sept. 18, 2015) (overruling the Objection by

the Creditor, Conn Kavanaugh Rosenthal Peisch & Ford LLP, to the proof of claim filed by

Follo).

Carl Follo  testified  about  reliance  on  occupancy  rates  and  revenue  information

contained in the sales brochure prepared by Hospitality Consultants, LLC.  That brochure

contained inconsistent information about room sales, listing sales of $184,480 and $200,188

for the same year (2001).  He made certain assumptions about the financial information in

the brochure, concluding "No one lies and increases the amount of their income tax, okay?"[3]

He also admitted that his partner and former spouse, Pam Beecher, fell in love with the Inn

-----

[3] The Court recognizes the apparent truth of that observation, but it is not a fact;
mistakes on income tax forms are not uncommon.

at first sight, but insisted that he was not swayed by her feelings. The Vermont Supreme

Court, in its decision, which was the only evidence submitted by Follo, summarized the

trial record as follows:

> Plaintiff entered into negotiations to purchase defendants' Inn late in 2002.
> He specifically pursued the Inn, even though the listed sales price was above
> his $1 million limit, because the profit-and-loss statement included in the
> marketing brochure for the Inn showed that it was a solid business. During
> negotiations, plaintiff asked for and received reports, *including tax returns,*
> *from defendants (via the real estate agent) on the revenues, sales, expenses, and net*
> *income of the Inn during 2001 and 2002.* Relying on these reports, plaintiff used
> the "gross revenue multiplier" approach to calculate that the property was
> worth $1,130,000 by multiplying the Inn's reported 2001 sales of $226,000 by
> five. Plaintiff then offered $1,080,000 for the Inn. However, in order to
> succeed with his bid for the Inn, plaintiff felt it was necessary to bid
> simultaneously on the Cottage because another bidder was prepared to make
> a bid on both properties at the same time. Plaintiff discussed with the real
> estate agent and defendant Florindo whether they thought he could raise
> sufficient revenue from the Cottage to cover its purchase price if he
> remodeled the Cottage to contain three suites, then rented those as part of the
> Inn business. According to plaintiff, both the real estate agent and Florindo
> expressed the opinion that he would "absolutely" get his money back using
> that plan, at least in part due to the occupancy rates and demand during
> certain times of the year as represented by defendants when they operated
> the Inn. Plaintiff purchased both the Inn and the Cottage for $1,245,000 in
> March 2003.

185 Vt. at 395-96 (emphasis supplied, footnote omitted).[4]

---

[4] In the footnote, the court observed:

Plaintiff sought financing for his purchase through the same bank that
held the mortgages on the Inn for Cranberry Farm, LLC. The bank
required plaintiff to have the properties appraised as a condition of the
financing, as it had for defendants. The same appraiser who appraised the
Inn for defendants in 2000 appraised the Cottage and Inn for plaintiff as a
single property worth $1.25 million in 2003. The new appraisal value was
thus $250,000 more than defendants paid for the Inn and the Cottage, and
$5,000 more than plaintiff paid for the properties.

D. <u>The Bankruptcy Court Decision</u>

The admitted facts and Follo's statement of his case set forth in the Joint Pretrial Memorandum were consistent with the allegations set forth in the Complaint.[5]  As Judge Bailey noted in his decision:

─────────────────────

[5] According to the bankruptcy court:

[T]he complaint states only as follows:

11. The [Plaintiffs'] Claims arise from a 2003 transaction whereby the [Plaintiffs] purchased an inn located in Rockingham, Vermont (the "Inn") from [Morency] and Paul Florindo ("Florindo") for $1,245,000 (the "Purchase Price"). . . .

12. The [Plaintiffs'] decision to purchase the Inn for the Purchase Price was based on their belief that the Inn generated certain levels of revenue and maintained certain occupancy rates. These beliefs came from documents which were either created by [Morency] and Florindo, or by third parties based on information that [Morency] and Florindo provided.

13. [Morency] and Florindo falsified information related to the Inn's revenues and value for the purpose of fraudulently causing the [Plaintiffs] to pay the Purchase Price which was, in fact, greatly in excess of the Inn's true value....

19. The Vermont Supreme Court has found that [Morency] made false representations regarding the Inn's occupancy and revenues, and that [Morency's] actions constituted fraud.

Complaint, ¶¶ 11–13, 19.

2013 WL 1342485, at *2.

The complaint nowhere specifies precisely when and how Morency made the representations in question and how they were false. However, the Plaintiffs attached to the complaint a copy of the decision of the Vermont Supreme Court on the parties' cross appeals from the Judgment (the "Appellate Decision"), and that decision indicates that the Judgment is based on proof as to one or both of two allegations of fraud against Morency. In the first, she is alleged to have signed tax returns for 2001 and 2002 that overstated the Inn's gross income for those years, which returns were supplied through a broker to the Plaintiffs and induced them to purchase the Inn. In the second, Morency is alleged to have falsified certain of the Inn's guest-information and room-assignment records to overstate the Inn's occupancy rates for 2001 or 2002; these falsified records were in turn supplied to a real estate agent, who incorporated the false information in a sales brochure that misrepresented the Inn's occupancy rates, which brochure was supplied to and relied on by the Plaintiffs.

2013 WL 1342485, at *2.  In addition, the bankruptcy court  recognized the following:

With respect to the substance of the Plaintiffs' claims against Morency for common law fraud, the Appellate Decision indicates that those claims were based on two independent allegations. In the first, she is alleged to have signed tax returns for 2001 and 2002 that overstated the Inn's gross income for those years, which returns were supplied through a broker to the Plaintiffs and induced them to purchase the Inn. In the second, Morency is alleged to have falsified certain of the Inn's written guest-information and room-assignment records to overstate the Inn's occupancy rates for 2001 or 2002; these falsified records were in turn supplied to a real estate agent, who incorporated the false information in a sales brochure that misrepresented the Inn's occupancy rates, which brochure was supplied to and relied on by the Plaintiffs.

Id. at *5 (footnote omitted).  In a footnote, the bankruptcy court further observed:

The Appellate Decision is unclear as to which year's occupancy rate Morency is alleged to have falsified. In ¶ 31, the decision indicates that the Plaintiffs relied on the brochure's false occupancy information for 2001; but in ¶ 41, the Vermont Supreme Court determined that the trial court record contained evidence to support this allegation of fraud because, at trial, Morency could not explain certain discrepancies in the Inn's 2002 records.

Id. at *5 n.5.  As the parties now admit, the exhibits relative to that information were

falsified.  *See* In re Morency, No. 10-13666 (Bankr. D. Mass. Sept.  18, 2015).

In its April 2, 2013 decision, the bankruptcy court, relying upon the summation of

the jury instructions in the decision of the Vermont Supreme Court, determined:

> The Plaintiffs must . . . show that each issue they would establish by
> preclusion is identical to one that was decided by the earlier judgment. To
> establish the specific issues that the Judgment decided, the Plaintiffs cite to
> certain instructions on common law fraud that they contend were given to
> the jury and to the requirements that, under Vermont law, would be required
> for a verdict under the CFA. Plaintiffs' Post–Trial Brief, pp. 3–4. At trial,
> however, the Plaintiffs did not introduce the jury instructions into evidence.
> The only evidence I have of the jury instructions is the Appellate Decision,
> which reproduces these only in part as follows:
>
> > In order to prove fraud, plaintiffs must demonstrate by clear
> > and convincing evidence each of the following essential
> > elements. One, that defendants misrepresented an existing fact
> > which affected the essence of the transaction with plaintiffs or
> > knowingly allowed another to make such a representation on
> > defendants' behalf; two, that defendants did so intentionally;
> > three, that the misrepresentation was false when made and
> > known at the time to be false by a defendant, or that the
> > representation was recklessly made as being within the
> > defendants' own knowledge without defendant in fact
> > knowing whether it was true or not.
>
> These instructions fall short of meeting the requirements of § 523(a)(2)(A) in
> at least three respects. . . .
>
> *** 
>
> The given instructions also fall short of establishing two requirements of
> subsection (a)(2)(B): that the creditor's reliance on the false statement was
> reasonable; and that the debtor made or published the false statement with
> intent to induce reliance. 11 U.S.C. § 523(a)(2)(B)(iii) and (iv). The Plaintiffs
> allege that the jury was instructed that a finding of reasonable reliance was
> necessary, but the Plaintiffs have submitted no evidence to support that
> allegation. Moreover, although Vermont law appears to require a showing
> of reliance, it does not appear to require that the reliance have been

reasonable. In <u>Bennington Housing Authority v. Bush</u>, 182 Vt. at 136, 933 A.2d at 210–11, the Vermont Supreme Court stated, with respect to reliance, only that fraud requires proof that the misrepresentation "was relied on by the defrauded party to his damage"; it made no mention of a reasonableness requirement.

<u>In re Morency</u>, 2013 WL 1342485, at *12-13.  Follo appealed.

E. <u>The District Court Decision</u>

On March 19, 2014, the United States District Court for the District of Massachusetts, Young, J., affirmed the bankruptcy court's decision, in part, and remanded the matter for further proceedings "in light of the more complete record established in this opinion so that the Bankruptcy Court can consider, in the first instance, whether issue preclusion is appropriate in these circumstances and, if it is, whether Follo has thus established his claim for the exception to discharge provided in Section 523(a)(2)(B)." <u>Follo v. Morency</u>, 507 B.R. 421, 433 (D. Mass. 2014).  The District Court directed the bankruptcy court to determine whether the predicate finding of "intent to defraud" for liability for common law fraud under Vermont law is equivalent to an "intent to deceive," a necessary element set forth in § 523(a)(2)(B).  <u>Id.</u>  The District Court further stated:

The Bankruptcy Court may of course now "address the permissibility of [Follo] . . . advancing arguments under subsection 523(a)(2)(B) when they made no mention of that subsection in the Joint Pretrial Memorandum".  <u>In re Morency</u>, 2013 WL 1342485, at *14 n.16. It may also consider whether Follo is procedurally defaulted for its failure to submit the complete Trial Transcript in evidence before the Bankruptcy Court.

In any event, its opinion will no doubt make clear whether its decision is on the merits or on procedural grounds.

<u>Id.</u> at 433-34.

15

"[T]he more complete record" resulted from a decision made by the District Court

to take judicial notice of jury instructions that were not part of the trial record. The District

Court stated:

> The sole item of evidence Follo submitted to the Bankruptcy Court in
> support of its argument for preclusion was the published opinion of the
> Vermont Supreme Court. In re Morency, 2013 WL 1342485, at *3. The
> Bankruptcy Court consequently considered that it was confined to a
> consideration of this document when forming its judgment as to whether the
> Vermont proceedings had issue preclusive effect. Id. at *3 n. 1. In reaching
> the conclusion that the jury was not charged with considering whether
> Follo's reliance was reasonable, the Bankruptcy Court relied upon an extract
> of the trial judge's charge to the jury, embedded at pages 404 to 405 of the
> Vermont Supreme Court's opinion, where the jury was instructed that:
>
> > In order to prove fraud, plaintiffs must demonstrate by clear
> > and convincing evidence each of the following essential
> > elements. One, that defendants misrepresented an existing fact
> > which affected the essence of the transaction with plaintiffs or
> > knowingly allowed another to make such a representation on
> > defendants' behalf; two, that defendants did so intentionally;
> > three, that the misrepresentation was false when made and
> > known at the time to be false by a defendant, or that the
> > representation was recklessly made as being within the
> > defendants' own knowledge without defendant in fact
> > knowing whether it was true or not.
>
> Id. at *12 (quoting Follo, 185 Vt. at 404–05, 970 A.2d 1230). From this extract
> it does not appear that, in holding Morency liable for common law fraud, the
> jury was required to conclude that Carl Follo's reliance upon the tax
> statement and occupancy information was objectively reasonable. The
> Bankruptcy Court properly so concluded.
>
> It must be emphasized, however, that the full Vermont Trial Transcript was
> not submitted in evidence, nor was the Bankruptcy Court, at any stage,
> requested to take judicial notice of it. A more extensive excerpt of the Trial
> Transcript is, however, available. It includes the entire charge to the jury, not
> just the extract quoted in the opinion of the Vermont Supreme Court.

I've read it.

The full Superior Court charge makes clear that the Bankruptcy Court's conclusion—based only on the extract in the Vermont Supreme Court opinion—is flat wrong.

507 B.R. at 431.[6]  The District Court, while expressing some reservations, specifically took

judicial  notice of the entire charge to the jury pursuant to Fed. R. Evid. 201(d).

Thus, while on the one hand directing the bankruptcy court to evaluate whether

"intent to defraud" is equivalent to "intent to deceive," the District Court, on the other

---

[6] The District Court stated:

Though the nature of our adversary system of justice would generally make this Court reluctant to take judicial notice of facts available but not produced at trial, *see, e.g.*, Fleischer Studios, Inc. v. A.V.E.L.A., Inc., 654 F.3d 958, 966 (9th Cir. 2011) ("a plaintiff may not cure her failure to present the trial court with facts sufficient to establish the validity of her claim by requesting that this court take judicial notice of such facts") (quoting Jespersen v. Harrah's Operating Co., 444 F.3d 1104, 1110 (9th Cir.2006) (en banc)) (internal quotation mark omitted); Tamari v. Bache & Co. (Lebanon) S.A.L., 838 F.2d 904, 907 (7th Cir. 1988) (Posner, J.) ("A litigant cannot put in part of his case in the trial court and then, if he loses, put in the rest on appeal."), in these circumstances general principles of justice and this Court's duty to accord judgments of other courts "full faith and credit", 28 U.S.C. § 1738, militate in favor of a contrary conclusion.

Here, were this Court simply to affirm, the two opinions of the Bankruptcy Court and the Vermont Supreme Court could easily be read to support the proposition that the decisional law of Vermont with  respect to common law fraud will not support the exception under Section 523(a)(2)(B) when the contrary is true. This will not do. So it is that in this exceptional circumstance, I will go outside the trial record and do what I would excoriate an appellate court for doing.

507 B.R. at 431-32.

hand, recognized potential procedural infirmities that would warrant rejection of Follo's

assertion of a claim under 11 U.S.C. § 523(a)(2)(B).

   F. Procedural Background Following Remand

   Following remand, Judge Bailey scheduled a status conference and issued an order,

dated July 9, 2014, requiring counsel to the parties to submit an agreed upon list of issues

to be briefed, as well as briefs, in light of the ruling of the District Court. The parties

complied and filed, in August of 2014, a Joint Statement of Issues To Be Briefed, as well as

briefs and reply briefs.

   As noted above, on May 22, 2015, Judge Bailey recused himself from Morency's

bankruptcy case and this adversary proceeding, which were both randomly assigned to

this Court. This Court conducted a status conference on June 18, 2015, at which this Court

entered an order directing Follo to file a Motion to Amend the Complaint and a

supplemental brief by June 25, 2015, and granted Morency an opportunity to file a

responsive brief by July 2, 2015.

   Follo filed a Motion to Amend the Complaint to which Morency filed an Opposition.

In addition, Follo filed a "Motion for the Court to take Judicial Notice of Jury Instructions

and Memorandum in Support Thereof," to which Morency filed an Opposition.

## III. THE PARTIES' JOINT STATEMENT OF THE ISSUES

   As noted above, the parties filed a Joint Statement of Issues to be Briefed. The

parties identified the following issues:

   1. The permissibility of the Plaintiff advancing arguments under subsection

523(a)(2)(B) when they made no mention of that subsection in the Joint Pretrial Memorandum. Follo v. Morency, 507 B.R. at 433.

2. Whether the Plaintiff is procedurally defaulted for failure to submit the complete trial transcript in evidence before the Bankruptcy Court. Id.

3. How the Court should address the problem posed by the impossibility, on the record before it, of determining what portion of the damages award is attributable to the fraud count. Follo v. Morency, 2013 WL 1342485 at *14, n.16.

4. Whether the Defendant had a full and fair opportunity to litigate the issues in the earlier action. Id.

5. Whether applying [issue] preclusion in this case is fair. Id.

6. Whether an intent to deceive is equivalent to an intent to defraud, such that under principles of collateral estoppel, the determination of the courts of Vermont that the Defendant acted with intent to defraud is preclusive as to whether she acted with intent to deceive under § 523(a)(2)(B). 507 B.R. at 433.

The issues identified by the parties are germane to the resolution of Follo's Motion to Amend the Complaint and the Motion for the Court to Take Judicial Notice of Jury Instructions. For the following reasons and as discussed in further detail below, the Court shall enter orders denying the Motion to Amend and the Motion for the Court to Take Judicial Notice of jury instructions. The Court determines that it is both impermissible for Follo to advance arguments under 11 U.S.C. § 523(a)(2)(B) when those arguments were not preserved in the Joint Pretrial Memorandum, let alone specifically pleaded in the Complaint. In addition, the Court determines that Follo is procedurally defaulted for failure to submit the complete trial transcripts into evidence before the bankruptcy court. Finally, the Court concludes that under the issue preclusion standard advanced by the

Vermont courts, it would be unfair to apply collateral estoppel to the Vermont judgment

so as to salvage Follo's claim under 11 U.S.C. § 523(a)(2)(B) at this point in time.

## IV. POSITIONS OF THE PARTIES

### A. <u>Follo</u>

Follo argues that this Court should except from discharge pursuant to 11 U.S.C.

§523(a)(2)(B) the judgment of the Windham Superior Court in the amount of $501,174.00,

plus post judgment interest from May 4, 2007.  Follo maintains that "[t]here is nothing

unfair about applying the Vermont jury verdict preclusively to establish the elements of

Section 523(a)(2)(B)," adding that "[n]one of the bases on which a Vermont court might

conclude that it is unfair to apply issue preclusion are present here" because there was no

showing by Morency that "it would be procedurally unfair to apply the issues decided by

the Vermont jury preclusively in this matter."  Follo claims that Morency is  improperly

seeking to have the Court reweigh the evidence heard by the Vermont jury.  In sum, Follo

maintains:

> The complete instructions of the Vermont Court to the jury were submitted
> to the Court as part of Follo's summary judgment motion. They are on the
> Court's adversary proceeding docket. They were summarized in full with
> appropriate citation in Follo's post-trial brief. That Follo referred to the
> Vermont Supreme Court's published opinion at the trial before this Court
> which only had an incomplete excerpt of the jury instructions cannot justify
> declining to decide this mater on the merits in favor of Follo.

Follo further contends that the claim under § 523(a)(2)(B) was properly before the

bankruptcy court.  Follo asserts the allegations set forth in the Complaint supported relief

under either § 523(a)(2)(A) or § 523(a)(2)(B), and relief under § 523(a)(2)(B) "was made

abundantly clear in Follo's pretrial motion for a directed verdict [sic]," adding that the

Court reached the issue in its decision and decided on the merits against Follo.  Follo also

contends that Morency was offered the opportunity to present additional evidence in

defense of liability under §  523(a)(2)(B) after remand, but declined it and that she has had

a full opportunity to argue the law under § 523(a)(2)(B).

According to Follo, § 523(a)(2)(B) requires that a debtor published a false statement

of financial condition with intent to deceive. 11 U.S.C. § 523(a)(2)(B)(iv) and that the District

Court remanded for a finding as to whether the Vermont jury verdict satisfied the intent

to deceive element.  Follo adds that the District Court took note of the following jury

instruction:

> [In order to prove fraud, plaintiffs must demonstrate by clear and convincing
> evidence each of the following essential elements.] One, that the Defendants
> misrepresented an existing fact which affected the essence of the transaction
> or knowingly allowed another to make such a representation on the
> Defendants' behalf; two, that the Defendants did so intentionally; [and] three,
> that the misrepresentation was false when made and known at the time to be
> false by a Defendant, or that the representation was recklessly made as being
> within the Defendant's own knowledge without Defendant in fact knowing
> whether it was true or not.

507 B.R. at 431. *See also* Follo v. Florindo, 185 Vt. 390, 404, 970 A.2d 1230, 1240 (2009).  Follo

adds that the District Court determined that the Vermont Supreme Court, the final arbiter

of Vermont law, determined that "a demonstration of an intent to deceive was necessary

for Morency to [have been] held liable for common law fraud." 507 B.R. at 433.  According

to the District Court, the Vermont Supreme Court further "declared that common law

fraud in Vermont is 'an intentional act with a specific intent to defraud the buyer.'" Id.;

21

Follo v. Florindo, 185 Vt. at 413, 970 A.2d at 1246.   Thus, in Follo's view, the only issue for

this Court to decide is whether the jury's finding that Morency acted with the specific

intent to defraud Follo can satisfy the intent to deceive element of § 523(a)(2)(B)(iv).  Follo

concludes, citing BLACK'S LAW DICTIONARY, 9th ed., that "intent to defraud" is therefore

synonymous with "intent to deceive."[7]

Citing Vermont law regarding issue preclusion,[8] Follo, focusing on the "full and fair

---

[7] Implicit in Follo's argument are the conclusions of the District Court with respect to § 523(a)(2)(B) regarding  statements in writing and reasonable reliance.  The District Court stated that "[t]he tax return is certainly a statement regarding Morency's financial condition, *see, e.g.*, In re Swan, 499 B.R. 118, 124 (Bankr. D. Mass. 2013) (Bailey, Bankr.J.)," adding: "therefore the sole issue before the Court is whether the guest information and room assignment records are also such statements."  507 B.R. at 430. With respect to reasonable reliance, the District Court determined that it was established by taking judicial notice of jury instructions that were not in evidence.

[8] According to the court in In re P.J., 185 Vt. 606, 969 A.2d 133 (2009),

In applying the doctrine of collateral estoppel, this Court follows the five-part test enunciated in  Trepanier v. Getting Organized, Inc., 155 Vt. 259, 265, 583 A.2d 583, 587 (1990). Collateral estoppel is appropriate where:

> (1) preclusion is asserted against one who was a party . . . in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) *applying preclusion in the later action is fair.*

Id. Collateral estoppel applies to issues of both fact and law. Mellin v. Flood Brook Union Sch. Dist., 173 Vt. 202, 209, 790 A.2d 408, 416 (2001). . . . The purpose of collateral estoppel is to conserve the resources of courts and litigants by protecting them against repetitive litigation, to promote the finality of judgments, to encourage reliance on judicial decisions, and to decrease the chances of inconsistent adjudication. Cent. Vt. Pub. Serv.

opportunity to litigate" and fairness components, notes that those factors are generally considered together.  In re P.J., 185 Vt. at 609, 969 A.2d at 138, and that Morency has the burden of proof on those issues.  Follo, while noting that Vermont courts focus on the procedural fairness of applying issue preclusion to prevent subsequent litigation of an issue already decided, contends that applying issue preclusion here is fair.  Follo asserts that Morency was a defendant in the Vermont action and is a defendant here; that the Vermont forum was not inconvenient or prejudicial to Morency as both Morency and Florindo lived and worked in Vermont while operating the Inn; that Morency was motivated to litigate the matter to the fullest and did so; that Follo's attempt to except the state court judgment from discharge was foreseeable; and that the legal standard employed in the state court, i.e., clear and convincing, is greater than that required  under  § 523(a)(2)(B), namely preponderance of the evidence.

Follo maintains that Morency is improperly seeking to have this Court reconsider the evidence heard by the Vermont jury, referencing the Guest Reservation Forms ("Guest Forms" and the "Reservations for the Inn" forms ("Room Sheets").  During the trial in the Vermont state court, Morency could not corroborate the names on the 2002 Guest Sheets with those on 2002 Room Sheets because the latter documents were altered, an inability that discredited her before the jury.  Although Follo took the position at the trial in the state

---

Corp., 172 Vt. at 20, 769 A.2d at 673.

In re P.J., 185 Vt. at  608, 968 A.2d at 136-37 (emphasis supplied).

court that Morency included guest names in the 2002 Guest Reservation Forms that could

not be corroborated by the guest names in the 2002 Room Sheets, Follo now concedes that

the exhibit containing the 2002 Room Sheets actually was comprised of 2001 Room Sheets

which were altered to make them appear as though they were 2002 Room Sheets with the

concomitant effect that the Inn appeared to have more guests in 2002 than it actually did.

Despite that concession, Follo, citing Kensington Rock Island Ltd. P'ship v. Am. Eagle

Historic Partners, 921 F.2d 122, 125-26 (7th Cir. 1990), and Redgrave v. Musselman (In re

Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey), 157 B.R. 1, 4 n.6

(S.D. N.Y. 1993), aff'd, 22 F.3d 1091 (2d Cir. 1994) ("[I]f successive claims of attorney

malpractice were themselves sufficient to avoid collateral estoppel, no fact finding or

judgment would be subject to collateral estoppel or res judicata."), asserts that Morency

was responsible for her poor trial performance, adding:

> The possible negligence of Morency's attorney at the Vermont Trial cannot
> justify denying the Vermont judgment the preclusive effect it is due.
> Morency sued her attorney, Richard Bowen, after the Vermont Trial on the
> basis, inter alia, that he had been negligent in not reviewing the 2002 Guest
> Reservation Forms and the 2002 Room Sheets with her and, as a result, she
> made a poor witness on the stand. . . . The matter was settled by the Chapter
> 7 trustee. . . . However, even though a litigant may have been ill-served by
> her attorney, she may not avoid the preclusive effect of issues finally
> determined while represented by that attorney; instead, the litigant's
> recourse is a suit for malpractice against the attorney.

Follo also contends that there was ample other evidence on which the jury could decide

that Morency was liable to Follo under § 523(a)(2)(B), noting that "she signed the income

tax returns that misrepresented the gross revenues of the Inn, in effect swearing that she

24

had reviewed them and that the information was correct, thus supporting the jury finding, at minimum, that she made false statements recklessly without regard to their truth."

Emphasizing that the matter should be decided on the merits and not on the basis of technical procedural grounds, Follo argues that the complete jury charge was properly before the bankruptcy court because in Follo's post-trial memorandum Follo provided the Court with the complete jury instructions with respect to common law fraud in Vermont, while also pointing to an attachment to the Motion for Summary Judgment. Follo adds that the content of the jury instructions is not subject to reasonable dispute and "judicial notice is appropriate for the decisions of other courts as well as the terms of the judicial record," citing Wyatt v. Terhune, 315 F.3d 1108, 1114 n.5 (9th Cir. 2003), *opinion withdrawn*, 315 F.3d 1108 (9th Cir. 2002), *cert. denied*, 540 U.S. 810 (2003), Opoka v. I.N.S., 94 F.3d 392, 394 (7th Cir. 1996); and Colonial Leasing Co. of N.E., Inc.  v. Logistics Control Group Int'l., 762 F.2d 454, 459 (5th Cir. 1985).

Finally, Follo contends that the claim under § 523(a)(2)(B) is properly before the Court, arguing that there is no requirement to plead more than a general claim under § 523(a)(2) in the Complaint and that the Complaint contained sufficient reference to false statements of financial condition.  Follo also points to the reference in the Joint Pretrial Memorandum's "Statement of the Case" that Follo "obtained documents which were either created by Morency, based on information that Morency provided and/or executed by Morency," as well as the Motion for Entry of Judgment with its specific reliance on § 523(a)(2)(B). He concludes:

Where the Section 523(a)(2)(B) issue was finally decided by the Court on the merits, but reversed on appeal on these merits, the Court cannot now on remand, in the interests of justice, decline to decide on the merits but instead dispose of the issue because the pleadings were not amended three years ago to expressly mention Section 523(a)(2)(B) -- a notice technicality. Fed. R. Bankr. P. 7015(b)(2) ("A party may move – at any time, even after judgment – to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.") (emphasis added); Madeja v. Olympic Packers, LLC, 310 F.3d 628, 636 (9th Cir. 2002) (motion to amend the pleadings was irrelevant once the trial court had considered the merits); Ostano Commerzanstalt v. Telewide Systems, Inc., 880 F.2d 642, 646 (2d Cir. 1989) ("issues that are tried, though not raised in the pleadings, [must] be treated as if they were raised in the pleadings. . . . cases should be decided on resolution of the actual dispute between the parties, rather than on the paper pleadings.").

Follo, in filing his Motion to Amend Complaint following Trial, on June 24, 2015, almost four years after the trial, which was held on August 17, 2011, relies upon the brief filed on August 14, 2014 after remand. In addition, Follo emphasizes that allegations in the Complaint gave fair notice of the claim under § 523(a)(2)(B) and that the Motion for Entry of Judgment filed on August 16, 2011, one day before the trial, contained an assertion of the claim under § 523(a)(2)(B). Follo maintains that Morency could have, but failed to, request a continuance or offer evidence as to § 523(a)(2)(B) and reiterates the argument that Morency had a fair opportunity to reply to the § 523(a)(2)(B) arguments and failed to show that she would have offered additional evidence or different evidence in response to a claim under § 523(a)(2)(B).

With respect to the Motion for the Court to Take Judicial Notice of Jury Instructions, Follo, citing Nantucket Investors II v. Ca. Fed. Bank (In re Indian Palms Assocs., Ltd.), 61 F.3d 197 (3d Cir. 1995), and Saco Local Dev. Corp. v. Armstrong Business Credit Corp. (In

re Saco Local Dev. Corp.), 13 B.R. 226 (Bankr. D. Me. 1981),  argues:

> A number of courts have held that a bankruptcy judge may take judicial
> notice of the relevant portions of the record of the bankruptcy case, even
> though specific documents were not entered in evidence in the matter then
> before the court. Judicial notice may be taken at any stage of a proceeding,
> including appeal, as long as it is not unfair to any party to do so and does not
> undermine a trial court's fact-finding authority.

B. Morency

Morency argues that Follo failed to plead in his Complaint any of the elements

pertinent to an exception to discharge based on a false statement of financial condition

under § 523(a)(2)(B).  She maintains that as the litigation progressed, Follo "unequivocally

staked out a position based solely on § 523(a)(2)(A)."  Morency notes the absence of such

a claim in the following submissions: 1) Follo's  Motion for Summary Judgment filed on

November 5, 2010; 2) the bankruptcy court's decision denying that motion; 3) Follo's

Motion for Reconsideration of the disallowance of the summary judgment motion, again

based upon relief under § 523(a)(2)(A); and 4) the Motion in Limine in which Follo "plainly

argued that the only issue to be contested at trial should be 'intent to induce reliance,' an

element specific only to (a)(2)(A)."  In addition, she points to Follo's Statement of the Case

in the Joint Pretrial Memorandum "framed exclusively in terms of § 523(a)(2)(A)."

Morency also observes that Follo's extensive list of exhibits did not include the Vermont

Supreme Court decision, the jury instructions, or any part of the transcript of the Vermont

trial, which led her to focus solely on the elements of § 523(a)(2)(A), particularly the

element of "intent to induce reliance," which the bankruptcy court had ruled could not be

established by collateral estoppel.  She further notes that Follo did not appeal the denial of

the Motion for Entry of Judgment.

Morency highlights the evidence she introduced at the August 17, 2011 trial, stating:

> Morency also presented unrebutted evidence concerning the prejudice
> caused by the malpractice of her trial attorney in Vermont. . . . Indeed, the
> Vermont Decision establishes that Morency was precluded from presenting
> her own expert witness at the trial because her counsel violated the discovery
> schedule. Follo v. Florindo, 970 A.2d 1230, 1235 (Vt. 2009). This resulted in
> Morency being unable to rebut Follo's expert testimony concerning the
> valuation of the Inn—a crucial issue given that Follo's case revolved around
> its assertion that the value of the Inn had been inflated. The malpractice
> complaint filed by Morency against her counsel, which was admitted into
> evidence, alleges numerous other serious errors, including its failure to
> prepare her for deposition and trial, and failure to object to improper jury
> instructions and closing argument. . . . Morency's bankruptcy trustee settled
> the malpractice action for $162,500.

Morency also points out that Follo argued entitlement to relief under § 523(a)(2)(B) in his

post-trial brief, citing jury instructions on "reasonable reliance" without providing any

citation to the relevant portion of the jury charge.

Morency further argues that the bankruptcy court did not reach the issues of

whether Follo was precluded from proceeding under § 523(a)(2)(B) because Follo did not

provide notice of the claim to Morency; whether Morency had a full and fair opportunity

to litigate the issues in Vermont; and whether applying issue preclusion to that claim

would be fair.  She contends:

> This Court should enter judgment in Morency's favor on procedural grounds
> due to Follo's numerous deficiencies which resulted in no notice and unfair
> surprise regarding the nature of Follo's claims and the evidence underlying
> them. Alternatively, the Court should rule in Morency's favor on substantive
> grounds, because she did not have a full and fair opportunity to litigate the

issues in Vermont, applying preclusion here is not fair, and the issues are not identical because "intent to deceive" is different than "intent to defraud."

Citing <u>Zullo v. Lombardo (In re Lombardo)</u>, 755 F.3d. 1, 4 (1st Cir. 2014), and <u>Veranda Beach Club L.P. v. W. Surety Co.</u>, 936 F.2d 1364, 1371 (1st Cir. 1991), as well as <u>Correa v. Hospital San Francisco</u>, 69 F.3d 1184, 1195 (1st Cir. 1995), *cert. denied,* 517 U.S. 1136 (1996) (theories not included in pretrial memorandum waived because "[a]n appellate court should not lightly relieve a litigant from the condign consequences of its failure to list a theory of defense at that critical stage of the proceedings"); <u>Roland M. v. Concord School Comm.</u>, 910 F.2d 983, 998-999 (1st Cir. 1990), *cert. denied,* 499 U.S. 912 (1991); <u>Baker v. Goldman Sachs & Co.</u>, 949 F.Supp.2d 298, 315 (D. Mass. 2013), *aff'd,* 771 F.3d 37 (1st Cir. 2014) (plaintiffs waived theories of liability which "were not alleged in their complaint, not argued at summary judgment, and not identified in the joint pretrial memorandum"), Morency specifically argues that Follo should be barred from advancing arguments under § 523(a)(2)(B) because Follo made no mention of that section in the Joint Pretrial Memorandum. Referencing Fed. R. Civ. P. 16(d), made applicable by Fed. R. Bankr. P. 7016, Morency argues that Follo's last minute mention of § 523(a)(2)(B) without having included it in the Joint Pretrial Memorandum "provided no notice to Morency, subverted the rules of procedure, and is blatantly unfair," particularly where he did not even attempt to amend his Complaint or the Joint Pretrial Memorandum to add § 523(a)(2)(B) as of the time of the filing of the brief. Morency notes in contrast that she moved to amend the Joint Pretrial Memoranudm when she learned that Follo would not call Carl Follo as a witness

despite listing him as one in the Joint Pretrial Memorandum.

Morency contends that, had she believed that Follo was asserting a claim under §
523 (a)(2)(B), she would have taken a vastly different approach to trial preparation and
focused more on all elements of collateral estoppel in defending the case.  In her view, Follo
raised the applicability of § 523(a)(2)(B) far too late in the proceedings, and failed to do so
"'squarely and distinctly'" as the Motion in Limine solidified her understanding, coupled
with his Statement of the Case in the Joint Pretrial Memorandum, that the only issues at
trial would involve § 523(a)(2)(A).  Citing DCPB, Inc. v. City of Lebanon, 957 F.2d 913, 917
(1st Cir. 1992), she asserts that allowing Follo to now proceed on a different theory under
the circumstances would contravene First Circuit precedent and unfairly prejudice her, as
Follo is seeking to "superimpose a new theory" on the evidence adduced at trial.

Morency also argues that Follo should be procedurally defaulted for failure to
submit the complete trial transcript before the bankruptcy court.  Morency observes that,
while the District Court took the extraordinary step of going outside the trial record, it did
so to prevent any misstatement of Vermont law, adding that excusing Follo's failures to
submit the complete trial transcript and to timely assert a claim under § 523(a)(2)(B) would
condone improper tactics and promote trial by ambush.

Morency adds that she did not have a full and fair opportunity to litigate the issues
in the earlier action  and applying issue preclusion is unfair.  She contends, citing Conte v.
Justice, 996 F.2d 1398, 1401 (2nd Cir. 1993); Charter Oak Fire Ins. Co. v. Electrolux Home
Prods., Inc., 882 F.Supp.2d 396, 401-403 (E.D.N.Y. 2012); Oakes v. Clark, No. N10C-04-146

30

DCS, 2012 WL 5392139, at *3 (Del. Super. Nov. 2, 2012), *aff'd*, 69 A.3d 371 (Del. Super. Ct. 2013); Avon Dev. Enters. Corp. v. Samnick, 286 A.D.2d 581, 730 N.Y.S.2d 295 (2001), that courts have found the absence of a full and fair opportunity to litigate issues where the prior action involved attorney negligence.  Morency states that her "inability to present an expert with respect to the valuation of the Inn resulted in a fundamental and crushing disadvantage, given that the case revolved around Follo's contention that Morency had inflated the Inn's value."

Finally, Morency asserts that an intent to deceive is not the equivalent of an intent to defraud for purposes of § 523(a)(2)(B).  She cites U.S. v. Yermian, 468 U.S. 63, 73 (1984); Ahmed v. Holder, 324 F.App'x 82, at *1 (2nd Cir. 2009) ("The intent to deceive is not equivalent to the intent to defraud"); U.S. v. Godwin, 566 F.2d 975, 976 (5th Cir. 1978) ("Intent to deceive and intent to defraud are not synonymous"), adding "[i]ntent to deceive differs from intent to defraud "in terms of the object of the crime," citing Cetik v. Gonzales, 181 F.App'x 117, 119 (2nd Cir. 2006).  Based upon U.S. v. Lichenstein, 610 F.2d 1272 (5th Cir. 1980), *cert. denied,* 447 U.S. 907 (1980), she also contends that an intent to deceive requires a design to induce belief in the falsity or to mislead, while an intent to defraud is an intent to deprive someone of something by means of deceit.

Morency filed a Reply to Follo's brief following remand, challenging his assertion that she was offered the opportunity to present additional evidence in defense of its new claim under § 523(a)(2)(B) nearly two years after trial and that her refusal to reopen the evidence to accommodate its untimely new theory means that she has "declined" a fair

31

opportunity to contest Follo's belated claim. She maintains:

> This argument brazenly foists responsibility on Morency for not seeking or
> agreeing to reopen the evidence and in effect waive the position she has
> consistently taken that she was provided no timely notice of Follo's twelfth
> hour claim. The subsection (a)(2)(B) claim was not part of this litigation until
> Follo inserted it into an eve of trial pleading and then argued it in its
> post-trial brief. Follo is not entitled to another trial on a new theory after
> having failed to timely plead and prosecute it in the first trial and having lost
> on the theory Follo chose to timely plead and prosecute. Follo has no right
> to this second bite at the apple, and certainly cannot blame Morency for not
> handing it over.

Morency also takes aim at Follo's suggestion that the failure to raise the § 523(a)(2)(B) claim

was merely a "notice technicality." She notes that, although Follo referred to "documents"

in the Joint Pretrial Memorandum, Follo made no reference to a "statement in writing

respecting the debtor's or an insider's financial condition." She also takes issue with any

notion that the claim under § 523(a)(2)(B) was tried by consent, adding that Follo's "skewed

reading of Rule 15(b)(2) would eviscerate any requirement to provide notice of what claims

are at stake to an opposing litigant."

Morency also rejects Follo's contention that she was not prejudiced and would not

have prepared differently for trial. Among other observations, Morency notes:

> Numerous other possibilities present themselves which demonstrate
> prejudice to Morency. Had she been on notice of the (a)(2)(B) claim, Morency
> could also have contended that she did not "ma[ke] or publish[] [the tax
> returns] with intent to deceive". Indeed, the Windham Superior Court on
> remand determined that the Vermont Decision could have been based on
> Morency's "vicarious liability" or "constructive fraud." In short, it is
> impossible and unfair to require Morency to reconstruct precisely how she
> would have approached and proceeded at the pre-trial, trial and post-trial
> stages of this litigation, and how her strategy and arguments would have
> influenced this Court and the District Court had she properly been put on

32

notice of a subsection (a)(2)(B) claim.

Morency emphasizes that she did not have a full and fair opportunity to litigate the issues and that applying issue preclusion would not be fair or in accordance with Vermont law due to the malpractice of her trial attorney and the falsification of evidence at trial in the state court. She argues that courts must evaluate the circumstances of each case, citing State v. Dann, 167 Vt. 119, 702 A.2d 105 (1997), *cert. denied,* 522 U.S. 1112 (1998). While noting that Vermont courts have not considered whether malpractice in previous litigation results in the lack of a "full and fair opportunity" to litigate, or whether it renders application of collateral estoppel unfair, Morency argues that Vermont courts look to decisions from other courts that have considered issue preclusion. She cites State v. Brunet, 174 Vt. at 139, 702 A.2d at 1010 ("We are aided in this evaluation by other courts that have considered the identical issue."), and State v. Stearns, 159 Vt. 266, 269, 617 A.2d 140, 141 (1992) ("We are aided in this evaluation by decisions from other courts that have considered issue preclusion in similar circumstances."), in support of her position.

Finally, Morency contends that Follo's conclusion that the Room Sheets for 2002 were altered to make it appear that the Inn had more guests than it actually had was speculative and unsupported. She cites testimony from the trial in the contested matter involving the Objection to Follo's proof of claim by Conn Kavanaugh Rosenthal Peisch & Ford LLP in which Carl Follo admitted that he lacked proof as to who altered the document, particularly where Morency's testimony established that she "was blindsided, emotionally distressed and severely prejudiced by her inability to explain the discrepancies

33

created by this skillfully tampered with evidence."

With respect to Follo's Motion to Amend Complaint, Morency, like Follo, relies on her brief and reply brief regarding issues on remand. Nevertheless, citing, *inter alia*, <u>Zullo v. Lombardo (In re Lombardo)</u>, 755 F.3d 1, 3 (2014), she adds that leave to amend is not appropriate under Fed. R. Civ. P. 15(a), made applicable to this proceeding by Fed. R. Bankr. P. 7015, as undue delay, standing alone, is a sufficient reason to deny an amendment. She observes that Follo did not make a token effort to explain why the Complaint was not amended sooner or why a separate count under § 523(a)(2)(B) was not included in the Complaint at the outset. She adds that she will be prejudiced by a late amendment because her approach to the case would have been different. With reference to Rule 15(b), and the decision in <u>Kenda Corp. v. Pot O'Gold Money Leagues, Inc.</u>, 329 F.3d 216, 232 (1st Cir. 2003), Morency contends that the only evidence introduced by Follo was the Vermont Supreme Court decision - - the same piece of evidence that Follo had used in support of his Motion for Summary Judgment under § 523(a)(2)(A) - - and that evidence admittedly was relevant to numerous aspects of a § 523(a)(2)(A) claim. She insists, however, that any acquiescence to the introduction of the Vermont Supreme Court decision into evidence was not implied consent to trial of a claim under § 523(a)(2)(B).

With respect to Follo's Motion to Take Judicial Notice, Morency observes that Follo is merely seeking to remedy the failure of his counsel to submit into evidence at trial the jury instructions given in the underlying state court litigation in the Vermont courts. Because Follo relied exclusively on the opinion of the Vermont Supreme Court to prove his

34

case at the trial conducted on August 17, 2011, calling no witnesses and submitting no other

exhibits, Morency maintains it is too late for Follo to ask this Court to take judicial notice

of the jury instructions, where the Vermont Supreme Court decision fails to establish the

case for collateral estoppel under either §523(a)(2)(B) without the additional evidence of

the jury instructions.  Citing, *inter alia*, Fleischer Studios, Inc. v. A.V.E.L.A., Inc., 654 F.3d

958, 966 (9th Cir. 2011) ("[A] plaintiff may not cure her failure to present the trial court with

facts sufficient to establish the validity of her claim by requesting that this court take

judicial of such facts."), Morency maintains that judical notice is not intended to permit a

party to fix procedural errors such as the failure to offer a critical piece of evidence.

Morency also notes that Follo had the jury instructions available at all times and chose not

to submit them even though a close evaluation of the case likely would have revealed that

he could not prevail without them.

**V. DISCUSSION**

    A. Introduction

    The matter before the Court is replete with irony: both Carl Follo and Morency

pursued dreams of operating a charming inn in a bucolic Vermont setting, and, in so doing,

lost most, if not all, of their life savings.  In addition, both Follo and Morency were poorly

served by their counsel.  The Vermont Supreme Court rejected Morency's claims of error

on the part of her attorney; the United States District Court salvaged Follo's claim under

§ 523(a)(2)(B) for consideration on remand by taking judicial notice of jury instructions that

were neither fully set forth in the decision of the Vermont Supreme Court nor submitted

into evidence at trial by Follo's counsel.

In the Vermont litigation, Morency's trial attorney failed to prepare her as a witness, failed to object to jury instructions, such that any objections to those instructions were not preserved on appeal,[9] and failed to include an expert witness in a scheduling order which led the trial court judge to exclude essential evidence of value that could have affected the amount of damages, if any, awarded to Follo.[10]  The Vermont Supreme Court, in rejecting

---

[9]  This failure resulted in Morency's inability to advance her argument that the evidence was insufficient to support a verdict under Vermont's Consumer Fraud Act because Follo was not a consumer and she was not a seller within the meaning of the statute.

[10]  The Vermont Supreme Court stated:

. . . Defendants next argue that the trial court abused its discretion when it upheld the original scheduling order for discovery in this case and precluded defendants from presenting any expert witnesses at trial. The trial court's ruling was prejudicial, according to defendants, because expert testimony about the subject property's value was essential in this case. Defendants maintain that plaintiff's fraud suit was predicated entirely on the claim that plaintiff was induced to pay more than market value for the property. Further, defendants posit that their expert testimony regarding property value was necessary because the court relied on plaintiff's expert's testimony as to the property's value to determine the appropriate damage award. In sum, defendants claim they were prejudiced because, had they been allowed to present their own expert testimony regarding property values, they might have persuaded the jury or the court either that no fraud occurred or that a lesser damage award was appropriate.

 . . . The trial court made its exclusionary ruling in response to defendants' attempt to amend the court-ordered discovery schedule. The original schedule, ordered in May 2006, required plaintiff to make expert disclosures by June 15, defendants to make their expert disclosures by July 15, and for the parties to complete all discovery by October 1, 2006. *See* V.R.C.P. 26(f) (the trial court "shall enter an order ... establishing a plan

Morency's claim that the trial court abused its discretion, observed that "[t]he burden of

disclosing experts is not a heavy one and if, as defendants now claim, 'expert testimony

was crucial' in this case, they were offered sufficient time to obtain and disclose experts

under the original discovery schedule." Follo v. Florindo, 185 Vt. at 402. The court added:

"[d]efendants offer no reasons or excuse for their failure to disclose experts within the time

given under the original schedule or for their decision not to move for an extension of time

before their discovery deadline passed." Id.

---

and schedule for discovery, setting limitations on discovery . . . as are
necessary for the proper management of discovery in the action"). Plaintiff
named his expert witnesses by his deadline, but defendants' deadline
passed without their required disclosure. By the time these issues were
presented to the trial court, in January 2007, six months had passed from
the time defendants were supposed to have disclosed their expert
witnesses, and they still had not done so.

. . . The trial court's rulings on the admission or exclusion of evidence are
discretionary. Boehm v. Willis, 2006 VT 101, ¶ 12, 180 Vt. 615, 910 A.2d 908
(mem.). We will not disturb a discretionary ruling "unless it is shown that
such discretion was abused or entirely withheld," Poplaski v. Lamphere,
152 Vt. 251, 255, 565 A.2d 1326, 1329 (1989), and the abuse of discretion
resulted "in prejudice to [a party's] substantial rights." Boehm, 2006 VT
101, ¶ 12, 180 Vt. 615, 910 A.2d 908 (internal quotations omitted); V.R.C.P.
61 ("No error in either the admission or the exclusion of evidence . . . is
ground for granting a new trial or for setting aside a verdict or for . . .
otherwise disturbing a judgment . . . unless refusal to take such action
appears to the court inconsistent with substantial justice."). The trial
court's decision to preclude defendants' use of expert witnesses was an
appropriate exercise of the court's discretion.

185 Vt. at 400-01.

B. Issues on Remand

1. The Sanctity of the Joint Pretrial Memorandum

Follo's bankruptcy counsel drafted a Complaint that failed to include a claim under § 523(a)(2)(B) for a false financial statement in writing. At best, Follo included an oblique reference to false written statements. The Complaint did not contain a recitation of facts aligned with the elements of a cause of action under § 523(a)(2)(B).[11] Counsel to Follo in the adversary proceeding had ample opportunity to formulate a trial strategy and prepare motions based upon the record of proceedings from the six days of trial and the decision

---

[11] Section 523(a)(2)(B) provides in relevant part:

(a) A discharge under section 727 . . .does not discharge an individual debtor from any debt - . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-- . . .

(B) use of a statement in writing--

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

11 U.S.C. § 523(a)(2)(B).

of the Vermont Supreme Court that could have referenced the specific elements of a cause

of action under § 523(a)(2)(B), but he failed to even refer to that exception to discharge until

one day before the commencement of trial in a motion captioned, Motion for Entry of

Judgment, which also did not contain any discussion of any applicable rule of civil

procedure. Moreover, there was no request to amend the complaint before the trial or after

the conclusion of the evidence.

The Complaint was devoid of specificity as to whether relief was sought under

either § 523(a)(2)(A) or § 523(a)(2)(B), although the Court recognizes that Follo referenced

"false statements regarding the Inn's occupancy and revenues," and "beliefs" coming from

unspecified "documents either created by the Debtor and Florindo, or by third parties

based on information that the Debtor and Florindo provided." Follo's Motion for

Summary Judgment, the parties' Joint Pretrial Memorandum, and Follo's Motion in Limine

were predicated upon a claim under § 523(a)(2)(A). The Motion for Entry of Judgment

referenced § 523(a)(2)(B) and the bankruptcy court considered the relief available under

that provision of the Bankruptcy Code in its decision, finding that Follo failed to establish

how issue preclusion would compel a finding that the debt was nondischargeable based

upon the limited jury instructions set forth in the decision of the Vermont Supreme Court.

Contrary to the position set forth in Follo's brief filed after remand that the Motion for

Entry of Judgment was a pretrial motion for a directed verdict [sic]," Follo's counsel during

the trial indicated that "[i]t wasn't any type of pretrial motion."

This Court concludes that Follo did not provide Morency with meaningful notice

that Follo was pursuing a claim under § 523(a)(2)(B) and concomitantly that she was

charged with parsing the decision of the Vermont Supreme Court to challenge the assertion

of a claim under that section.  The bankruptcy court's pretrial order required the parties

to submit a statement of their respective cases.  Follo did not adequately or honestly inform

either Morency or the bankruptcy court that Follo intended to pursue a claim under  §

523(a)(2)(B); the last minute Motion for Entry of Judgment did not serve to rectify the

strategic posture Follo elected to choose between the filing of the Complaint and the

commencement of the trial, particularly in view of the Motion in Limine which only

addressed an issue under § 523(a)(2)(A), namely evidence related to "intent to induce

reliance."

Trial by ambush is not only distasteful, it can be a violation of due process.  Judge

Bailey's willingness to consider the § 523(a)(2)(B) claim for relief in its decision and Follo's

post-trial brief addressing issues relative to that claim, in this Court's view,  do not relieve

Follo of the consequences of counsel's failure to abide by the pretrial order.

In this regard, this Court observes that the bankruptcy court did not rule on the

Motion for Entry of Judgment until after the conclusion of the trial on August 17, 2011,

stating "Denied without prejudice to consideration of the preclusion issue upon submission

of the case at trial," adding "[t]his is essentially a dispositive motion in limine after the

deadline for dispositive motion and without affording the defendant sufficient time to

respond." Those rulings suggest that the bankruptcy court was skeptical of permitting

Follo to proceed under § 523(a)(2)(B).  In its decision, the bankruptcy court did not reach

40

the issue, concluding that there was not an identity of issues relative to the common law

fraud and Consumer Fraud Act claims asserted in the state court and the claim under §

523(a)(2)(B) because "[t]he given instructions also fall short of establishing two

requirements of subsection (a)(2)(B):  that the creditor's reliance on the false statement was

reasonable; and that the debtor made or published the false statement with intent to induce

reliance." 2013 WL 1342485, at *13 (citing 11 U.S.C. § 523(a)(2)(B)(iii) and (iv)).  Because of

Follo's obvious failure to submit into evidence the jury instructions which led the

bankruptcy court to conclude that he failed to establish that collateral estoppel provided

a basis for exception from discharge under § 523(a)(2)(B), the bankruptcy court did not

reach the issue of whether Follo should be permitted to proceed under § 523(a)(2)(B),

having failed to cogently set forth a claim under § 523(a)(2)(B) or to move to amend the

Joint Pretrial Memorandum to set forth such a claim.

Federal Rule of Civil Procedure 16(d), made applicable to this proceeding by Fed.

R. Bankr. P. 7016 provides:  "After any conference under this rule, the court should issue

an order reciting the action taken. This order controls the course of the action unless the

court modifies it." *See also* MLBR 7016-1(b).  Moreover, Fed. R. Civ. P. 16(e) provides: "The

court may modify the order issued after a final pretrial conference only to prevent manifest

injustice." Finally, Fed. R. Civ. P. 16(f) provides that a court on its own motion may issue

an order, including those under Rule 37(b)(2)(A)(ii)-(vii), if a party "fails to obey a

scheduling or other pretrial order."  In this adversary proceeding, the bankruptcy court

well in advance of trial issued a pretrial order requiring the parties to summarize their

respective cases.  Follo did so and did not reference in any meaningful way a claim under

§ 523(a)(2)(B). *See* Adams v. Dorsie's Steak House, Inc. (In re Dorsie's Steak House, Inc.),

130 B.R. 363, 365 (D. Mass. 1991) (" [T]he power of a trial court, and, by extension, that of

a bankruptcy court, to manage a case by excluding witnesses not listed in advance does not

depend upon the Federal Rules of Civil Procedure or, in this case, upon the Bankruptcy

Rules. Rather, judges have the inherent authority to issue pretrial case management orders

and to enforce them by appropriate measures.").

In Correa v. Hospital San Francisco, 69 F.3d 1184 (1st Cir. 1995), *cert. denied*, 517 U.S.

1136 (1996), the United States Court of Appeals for the First Circuit emphasized the

importance of the pretrial order in "shap[ing] the contours of the ensuing trial by setting

forth the legal theories upon which the parties intend to rely," id. at 1195, where the

defendant failed to assert a defense at the pretrial conference, the defense was not part of

the pretrial order signed by all counsel and entered by the district court, and did not

address the defense at the trial itself.  The court stated:  "This was a waiver, pure and

simple."   Id. The court rejected reliance on the defendant's motion for judgment

notwithstanding the verdict, stating:  "movant cannot use such a motion as a vehicle to

introduce a legal theory not distinctly articulated in its close-of-evidence motion for a

directed verdict."  Id. at 1196 (citations omitted).

Similarly, in Veranda Beach Club, Ltd. P'ship v. Wester Surety Co., 936 F.2d 1364

(1st Cir. 1991), a case in which one of the plaintiffs, Faneuil Hall Capital Group Inc.

("Faneuil") argued that the lower court erred in dismissing a claim, mistakenly

denominated by Faneuil as one for negligent misrepresentation, because the lower court

struck the claim before trial pursuant to Fed. R. Civ. P. 16(f), which permits the imposition

of sanctions upon parties who fail to comply with, or who endeavor to subvert, pretrial

orders. The First Circuit observed:

> The proper performance of the case-management function requires that the
> trial court be allowed great latitude in applying Rule 16(f). *Accord* Matter of
> Sanction of Baker, 744 F.2d 1438, 1440 (10th Cir.1984) (Rule 16(f) "give[s]
> courts very broad discretion to use sanctions where necessary . . . to insure
> the expeditious and sound management of the preparation of cases for
> trial"), *cert. denied*, 471 U.S. 1014, 105 S.Ct. 2016, 85 L.Ed.2d 299 (1985). Thus,
> we review the magistrate's imposition and choice of sanctions only for abuse
> of discretion. *See* National Hockey League v. Metropolitan Hockey Club, Inc.,
> 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976); Roland M. v.
> Concord School Comm., 910 F.2d 983, 999 (1st Cir.1990), *cert. denied*, 499 U.S.
> 912, 111 S.Ct. 1122, 113 L.Ed.2d 230 (1991).

>> Faneuil challenges the preclusive order primarily on the basis
>> that the negligent entrustment claim was part of its original
>> complaint. The riposte is misdirected. The issue is not whether
>> the claim was ever raised in the pleadings, but whether it was
>> sufficiently developed and perennialized in the relevant
>> pretrial proceedings. As a case takes shape and the court
>> struggles to narrow and pinpoint the issues, *the parties have an*
>> *unflagging obligation to spell out squarely and distinctly those*
>> *claims they desire to advance at the trial proper*. Good-faith
>> compliance with Civil Rule 16 plays an important role in this
>> process. *See* Erff v. MarkHon Industries, Inc., 781 F.2d 613, 617
>> (7th Cir.1986) ("Because the parties rely on the pre-trial
>> conference to inform them precisely what is in controversy, the
>> pre-trial order is treated as superseding the pleadings and
>> establishes the issues to be considered at trial."). In these
>> purlieus, a litigant forsakes clarity and forthrightness at its
>> peril.

Here, the record confirms that Faneuil failed to advance the negligent

entrustment theory in any of its pretrial submissions. . . . We agree with the

magistrate that a single reference to negligent entrustment in a lengthy

complaint, casually made and soon forgotten, was not enough. *When all is said and done, veiled hints and cryptic allusions will not suffice to preserve claims for trial.*

In sum, the fair intendment of Faneuil's filings, taken sequentially, conduced to the belief that, as trial neared, negligent entrustment was no longer in the case. Hence, the court could properly find that Rule 16 was flouted and that Western Surety would be unfairly prejudiced if Faneuil's failure appropriately to preserve the issue was overlooked. We conclude, therefore, that dismissing the negligent entrustment claim did not entail an abuse of discretion. *See* <u>Erff</u>, 781 F.2d at 618 (trial court was not obligated to consider plaintiff's alternative theory of recovery because it was not disclosed at pretrial conference); <u>Allen v. United States Steel Corp.</u>, 665 F.2d 689, 696 (5th Cir. 1982) (same); *see also* <u>Roland M.</u>, 910 F.2d at 999 ("When a litigant tardily seeks to bring a new issue in from the cold, the reasons for changing the syllabus and whether prejudice may result are factors which inform the district court's discretion.").

<u>Veranda Beach Club Ltd. P'ship</u>, 936 F.2d at 1370-71 (emphasis supplied).  *See also* <u>Banco Bilbao Vizcaya Argentaria v. Wiscovitch-Rentas (In re Net Velazquez)</u>, 625 F.3d 34, 40 (1st Cir. 2010) ("A defense or legal theory may not be preserved by bare reference in a pleading if it is thereafter abandoned until, freshly discovered on appeal, it is raised anew.").

This Court concludes that the principles set forth in the decisions cited above are on point and dictate the outcome:  Follo failed to preserve a claim under § 523(a)(2)(B) when he failed to outline it in the Joint Pretrial Memorandum which required statements of the parties' respective cases. Notably, the Vermont Supreme Court emphasized that the trial court acted within its discretion in upholding the sanctity of its pretrial procedures and upheld the discretionary rulings of the trial court which excluded testimony from Morency's expert witness.  In the adversary proceeding, the bankruptcy court issued a Pretrial Order that required the parties to concisely state their respective cases.  Where

44

Follo was advantaged by the omissions and incompetence of Morency's Vermont attorney, who failed to timely and properly list an expert witness, Follo must be held to that same standard for failing to concisely set forth a claim under § 523(a)(2)(B) in the Complaint or the Joint Pretrial Memorandum.

> 2. Follo is procedurally defaulted for failure to submit the complete trial transcript

Even were this Court to conclude it was permissible for Follo to advance his claim for relief under § 523(a)(2)(B), this Court concludes that Follo is procedurally defaulted for failing to submit the complete trial transcript, or, at the very least, all applicable jury instructions to the bankruptcy court at trial in this adversary proceeding. As the bankruptcy court concluded, the decision of the Vermont Supreme Court was insufficient to find an "identity of issues" for purposes of applying collateral estoppel and excepting the judgment from discharge under § 523(a)(2)(B). 2013 WL 1342485, at *13. The complete trial transcript was necessary, as were the jury instructions, to enable to bankruptcy court to determine whether any false statements in writing of financial condition were published with the intent to deceive Follo. In taking judicial notice, the District Court observed that it would excoriate another appellate court going outside the record on appeal. 507 B.R. at 431-32. Nevertheless, it stated:

> The Trial Transcript [of which it took judicial notice] evidences that the jury in the Vermont Superior Court was instructed that, to find Morency liable for common law fraud, it was essential that she have intentionally misrepresented an existing fact which was then relied upon by Follo. *See* Trial Tr., 194:1–17, at App. No. 0084. *Whether these instructions are equivalent to a direct requirement that Morency be shown to have acted with a specific intent*

> *to deceive is unclear*. Here, however, the Vermont Supreme Court, upon full
> briefing, affirmed the verdict of the jury sitting in the Vermont Superior
> Court. In so doing, it declared that common law fraud in Vermont is "an
> *intentional* act with a specific intent to defraud the buyer" and thus
> necessarily determined that Morency had such specific intent. Follo, 185 Vt.
> at 413, 970 A.2d 1230 (emphasis added). . . .   [T]his affirmation by the
> Vermont Supreme Court evidences that a demonstration of an intent to
> deceive was necessary for Morency to be held liable for common law fraud.

507 B.R. at 433.  This Court observes that that statement was made in the context of the

Vermont Supreme Court's conclusion that the trial court erred in not sending the issue of

punitive damages to the jury.  Id. The Vermont Supreme Court, however, also stated:

> . . . the guest-information forms and room-assignment book that plaintiff
> introduced at trial were filled out, for the most part, in Ms. Morency's
> handwriting. Even though she had filled out those forms, she could not
> explain why the 2002 guest-information forms contained many customer
> names and reservations that never appeared in the corresponding
> room-assignment book.  This provides sufficient information for a reasonable
> jury to conclude that defendant Morency made misrepresentations by aiding
> in supplying false statements of occupancy rates to plaintiff while he was
> deciding to purchase the Inn.

> . . .  All of these facts, coupled with her close relationship with Mr. Florindo,
> provide a sound basis for the jury to have concluded that Ms. Morency was
> enmeshed in the companies, the Inn's operation, and in Mr. Florindo's
> decision-making. Further, the trial provided sufficient clear and convincing
> evidence that Ms. Morency *knowingly or recklessly made false statements*
> *regarding the Inn's occupancy and revenues, which plaintiff relied on in purchasing*
> *the Inn.* Although she testified that she had no idea that Mr. Florindo
> supplied the false documentation to plaintiff, a reasonable jury simply could
> have discredited her testimony, under the circumstances, as a false, and
> inculpatory, protestation of innocence. "It needs no citation of authorities to
> the proposition that the credibility of the witnesses is for the jury." Smith v.
> Grove, 119 Vt. 106, 114, 119 A.2d 880, 885 (1956). Not only did the jury find
> Ms. Morency's testimony unconvincing here, but the trial  court upheld the
> jury's verdict after she renewed her motion for judgment as a matter of law.

185 Vt. at 410 (emphasis supplied).

While the Vermont Supreme Court's statement is incriminating, this Court is unable to conclude, without the full trial transcript, which has never been submitted to either this Court or to the prior bankruptcy judge, that Morency executed tax returns with the intent to deceive Follo as there was evidence that some of the returns were filed before the decision to sell the Inn was made.  In addition, there was no evidence that Morency learned that the returns were erroneous before they given to Follo or provided them to Follo knowing that they were false or recklessly believing them to be true.  Finally, there was no evidence in the trial record in the adversary proceeding as to when and who altered the Room Sheets which were presented to Morency, which undermined her credibility,[12] and whether those documents formed the basis for the occupancy information and profit and loss statements set forth in the Sales Brochure.  Moreover, absent Morency's ability to submit valuation evidence, the extent to which she was knowingly or recklessly indifferent to the truth of any statements in writing cannot be ascertained by this Court.

Although Follo strenuously argues that Morency is not prejudiced, this Court is compelled to agree with the decisions cited by the District Court.  *See* Fleischer Studios, Inc. v. A.V.E.L.A., Inc., 654 F.3d 958, 966 (9th Cir.2011) ("[A] plaintiff may not cure her failure to present the trial court with facts sufficient to establish the validity of her claim by requesting that this court take judicial notice of such facts.") (quoting Jespersen v. Harrah's

---

[12] Consideration of the record of proceedings pertinent to Conn Kavanaugh Rosenthal Peisch & Ford LLP's Objection to Follo's proof of claim did not permit this Court to determine who altered the Room Sheets from 2001 to make them appear to be from 2002.  *See* In re Morency, No. 10-13666-JNF, (Bankr. D. Mass. September 18, 2015).

Operating Co., 444 F.3d 1104, 1110 (9th Cir. 2006) (en banc)) (internal quotation mark

omitted); Tamari v. Bache & Co. (Lebanon) S.A.L., 838 F.2d 904, 907 (7th Cir. 1988) (Posner,

J.) ("A litigant cannot put in part of his case in the trial court and then, if he loses, put in the

rest on appeal."). *See also* N.D. ex rel. v. Hawaii Dept. of Educ., 600 F.3d 1104, 1113 n.7 (9th

Cir. 2010) ("N.D. submitted additional declarations regarding the harm suffered by the

children on appeal and asked for the Court to take judicial notice of them. We decline to

do so. We view only the district court record on appeal.").

Follo and Follo's counsel knew or should have known of a claim under § 523(a)(2)(B)

well in advance of trial, and likely prior to the filing of the Complaint.  Having moved for

summary judgment under § 523(a)(2)(A) in reliance on the decision of the Vermont

Supreme Court, it was incumbent upon Follo to evaluate that decision to ascertain whether

it was sufficient to afford relief under either § 523(a)(2)(A) or § 523(a)(2)(B).  It would

appear that Follo did not undertake that analysis until the filing of the Motion for Entry of

Judgment.  That motion was conclusory and failed to point to specific language in the

Vermont Supreme Court decision that would support each and every element of a claim

under § 523(a)(2)(B).  Under those circumstances, this Court concludes that Follo is

procedurally defaulted for failure to submit sufficient evidence in the form of the trial

transcript in support of a claim under § 523(a)(2)(B).

> 3. Morency did not have a full and fair opportunity to litigate
> the issues in the earlier action and applying issue preclusion is
> unfair.

As the bankruptcy court recognized, the jury instructions available to it, as set forth

in the Vermont Supreme Court decision, 15 Vt. at 185 Vt. at 404-405, "do not filter out statements respecting the debtor's or an insider's financial condition, as does § 523(a)(2)(A)." In re Morency, 2013 WL 1342485, at *13. The bankruptcy court added: "In fact, both possible bases of the common law fraud verdict were statements respecting the debtor's or an insider's financial condition: both the tax return and the statements in the brochure about occupancy rates concerned the Inn's income and overall income flow." Id. Thus, Follo's belated post-trial argument that issue preclusion compels the conclusion that the judgment be excepted from discharge under § 523(a)(2)(B) must be evaluated with reference to Vermont law relative to issue preclusion which requires consideration of, not only whether there was an identity of issues, but whether there was a full and fair opportunity to litigate those issues in the earlier action; and whether applying preclusion in the later action is fair. See In re P.J., 185 Vt. 606, 608, 969 A.2dd 133, 137 (2009); Trepanier v. Getting Organized, Inc., 155 Vt. 259, 265, 583 A.2d 583, 587 (1990). "The fourth and fifth elements — whether there was a full and fair opportunity to litigate and whether it is fair to apply preclusion here — are generally considered together." In re P.J., 185 Vt. at 605, 969 A.2d at 138. In State v. Brunet, 174 Vt. 135, 139, 806 A.2d 1007, 1010 (2002), the court indicated to be "fair" application of collateral estoppel "'must serve the interests of justice.'"

Although Follo argues that Morency had a full and fair opportunity to litigate in the Vermont state court and application of collateral estoppel would be fair, this Court disagrees. This Court was unable to discover any Vermont cases addressing the issue of

whether attorney malpractice can deprive a party of a full and fair opportunity to litigate.

Vermont courts, however, have looked to decisions from other courts that have considered

issue preclusion in this context. *See, e.g.,* State v. Brunet, 174 Vt. at 139, 806 A.2d at 1010.

In Conte v. Justice, 996 F.2d 1398 (2d Cir. 1993), the United States Court of Appeals for the

Second Circuit observed that "[u]pon satisfaction of the issue identity requirement [which

Follo failed to do in the bankruptcy court], inquiry turns toward whether the party to be

bound had a full and fair opportunity to contest the determination now said to control."

Id. at 1400.  The court stated:

> Under New York law, an inquiry into whether a party had a full and fair
> opportunity to litigate a prior determination must concentrate on "the
> various elements which make up the realities of litigation."Factors listed by
> the New York Court of Appeals to assist in this inquiry include the forum for
> the prior litigation, *the competence and experience of counsel*, the foreseeability
> of future litigation, and the context and circumstances surrounding the prior
> litigation that may have deterred the party from fully litigating the matter.

Id. at 1401 (emphasis supplied, citations omitted).  According to the court in Charter Oak

Fire Ins. Co. v. Electrolux Home Prods., Inc., 828 F.Supp.2d 396 (E.D.N.Y. 2012), "[t]he

party seeking the benefit of collateral estoppel bears the burden of proving the identity of

the issues, while the party challenging its application bears the burden of showing that he

or she did not have a full and fair opportunity to adjudicate the claims involving those

issues." Id. at 401 (citing Khandhar v. Elfenbein, 943 F.2d 244, 247 (2d Cir. 1991), and

Kaufman v. Eli Lilly & Co., 65 N.Y.2d 449, 455, 482 N.E.2d 63, 67, 492 N.Y.S.2d 584 (1985)).

The court in Charter Oak also stated:  "collateral estoppel is an equitable doctrine-not a

matter of absolute right. Its invocation is influenced by considerations of fairness in the

50

individual case." 882 F.Supp.2d at 493 (citation omitted).  The United States Bankruptcy

Court for the District of Vermont recognized that maxim in one of its decisions, noting the

following:

> . . . as an equitable doctrine, the determination of whether collateral estoppel
> applies in any particular instance must be made on a case-by case basis, with
> a focus on whether doing so would be fair:
>
>> The doctrine [of collateral estoppel], however, is a flexible one,
>> and the enumeration of these elements is intended merely as
>> a framework, not a substitute, for case-by case analysis of the
>> facts and realities. In the end, the fundamental inquiry is
>> whether relitigation should be permitted in a particular case in
>> light of fairness to the parties, conservation of the resources of
>> the court and the litigants, and the societal interests in
>> consistent and accurate results. No rigid rules are possible,
>> because even these factors may vary in relative importance
>> depending on the nature of the proceedings.

Garceau Auto Sales, Inc. v. Carpenter (In re Carpenter), No. 13-10080 Adv. P. No. 13-1011,

2014 WL 3848578 at *5 (Bankr. D. Vt. Aug. 1, 2014) (citing  Buechel v. Bain, 97 N.Y.2d 295,

304, 740 N.Y.S.2d 252, 766 N.E.2d 914 (N.Y. 2001) (internal citations and quotations

omitted)). See also D'Arata v. N.Y. Cent. Mut. Fire Ins. Co., 76 N.Y.2d 659, 664, 564 N.E.2d

634 (1990) (holding that collateral estoppel is grounded on concepts of fairness and should

not be rigidly or mechanically applied).

This Court recognizes the general rule that knowledge of the attorney (or lack of

knowledge) is imputed to the client and that a client is bound by the acts or omissions of

his attorney. Automated Salvage Transport, Co., L.L.C. v. Swirsky (In re Swirsky), 372 B.R.

551, 564 (Bankr. D. Conn. 2006) (citing, inter alia, Pioneer Inv. Servs. Co. v. Brunswick

Assocs. Ltd. P'ship, 507 U.S. 380, 397, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)). In some

jurisdictions the general rule is abandoned where an attorney acts in bad faith or

intentionally neglects the client's business.  In re Swirsky, 137 B.R. at 564 (citing Allen v.

Nissley, 184 Conn. 539, 543, 440 A.2d 231 (1981)).  Although this Court has no direct

evidence that Morency's state court attorney intentionally neglected the case, the Court

concludes that the malpractice of Morency's attorney was so pervasive and detrimental as

to deprive her of a full and fair opportunity to litigate the issues in the state court

proceeding.  Where Morency's attorney did not review critical pieces of evidence with her

prior to her testimony to enable her to ascertain problems with them, the Court concludes

that he was recklessly indifferent to her case. See Oakes v. Clark, No. N10C-04-146 DCS,

2012 WL 5392139, at *3 (Del. Super. Nov. 2, 2012), aff'd, 69 A.3d 371 (Del. Super. Ct. 2013)

("The very nature of a legal malpractice claim by an aggrieved client, however,

encompasses a claim that said client did not have a full and fair opportunity to litigate

where the alleged negligence prevented the client from fully presenting a defense.

Therefore, under the doctrine of collateral estoppel, a client is not precluded from

rearguing an issue of law decided adversely to such client due to alleged attorney neglect."

(footnotes omitted)).

Even assuming that Morency had a full and fair opportunity to litigate the matter

in the state court, however, application of collateral estoppel in this case would be

profoundly unfair as the result would be that the documented malpractice of Morency's

attorney would deprive her of an opportunity to except a judgment in excess of $500,000

from discharge while the errors of Follo's attorneys in setting forth and proving the §

523(a)(2)(B) claim in the trial of this adversary proceeding would be judicially excused.

Follo, through oversight or omission of counsel, failed to establish an identity of issues

between the state court common law fraud claim and the § 523(a)(2)(B) claim in the

bankruptcy court.  Although Morency participated in the state court litigation, she obtained

successor counsel for her appeal.  The Vermont Supreme Court affirmed, but this Court

cannot overlook that the harm caused by Morency's trial attorney's neglect occurred at the

trial level.  Morency established that her counsel neglected to prepare her as a witness,

neglected to object to jury instructions thus failing to preserve them on appeal, and

neglected to comply with a court-ordered discovery schedule, thereby precluding the

introduction of expert testimony as to the value of the Inn.

Yet, Follo contends that Morency was not prejudiced by what transpired in the state

court litigation, including the alteration of a key exhibit which when presented to her

fatally undermined her credibility before the jury, and urges this Court to decide the issues

on the merits.  The irony is remarkable and inescapable.  In making those arguments, Follo

conveniently and hypocritically overlooks that Follo's counsel failed to expressly plead and

assert a claim under § 523(a)(2)(B) in the Complaint, failed to mention the claim under that

section of the Bankruptcy Code in the Joint Pretrial Memorandum, a circumstance

analogous to Morency's counsel's failure to list the expert witness in the discovery

schedule, and failed to introduce the complete state court trial transcript and jury

instructions at the trial.  Without the intercession of the District Court, sitting as an

intermediate appellate court, in referencing matters wholly outside the record before the

bankruptcy court at trial, Follo would not be in a position to advance any arguments that

collateral estoppel applies to a claim that was neither properly pleaded, *see* <u>Veranda Beach</u>

<u>Club, Ltd. P'ship v. Western Sur. Co.</u>, 936 F.2d 1364, 1371 (1st Cir. 1991) ("As a case takes

shape and the court struggles to narrow and pinpoint the issues, the parties have an

unflagging obligation to spell out squarely and distinctly those claims they desire to

advance at the trial proper. Good-faith compliance with Civil Rule 16 plays an important

role in this process."), nor  tried with consent. *See*  <u>DCPB, Inc. v. City of Lebanon</u>, 957 F.2d

913, 917 (1st Cir. 1992) (citing <u>Grand Light & Supply Co. v. Honeywell, Inc.</u>, 771 F.2d 672,

680 (2d Cir.1985) ("The purpose of Rule 15(b) is to allow the pleadings to conform to issues

actually tried, not to extend the pleadings to introduce issues inferentially suggested by

incidental evidence in the record.").   The irony is further compounded because the

primary, if not sole, asset of value in this case, which will provide a dividend to creditors,

including Follo, is the settlement proceeds of $162,500 from Morency's malpractice claim

against her Vermont trial attorney.   Under these circumstances, this Court concludes that

Morency has sustained her burden that collateral estoppel should not be applied to the

claim under § 523(a)(2)(B), even were this Court to conclude that it would  be permissible

for Follo to have advanced arguments under that section despite failing to adequately

plead it in the Complaint or mention it in the Joint Pretrial Memorandum.

54

C. The Motion to Amend Complaint Following Trial and the Motion for the Court to Take Judicial Notice

In view of the foregoing rulings, the Court turns to the merits of the Motion to Amend.  In Zullo v. Lombardo (In re Lombardo), 755 F.3d 1 (1st Cir. 2014), the United States Court of Appeals for the First Circuit set forth the standard governing motions to amend complaints in the context of a bankruptcy appeal.  It stated:

> Under the rules governing adversary proceedings, the bankruptcy court should freely give a party leave to amend his complaint when justice so requires. *See* Fed. R. Bankr.P. 7015; Fed.R.Civ.P. 15(a)(2). While the rules thus reflect a liberal amendment policy, we defer to the bankruptcy court's denial of leave to amend if supported by an apparent, adequate reason, *see* Grant v. News Grp. Bos., Inc., 55 F.3d 1, 5 (1st Cir. 1995), and under this court's precedent, undue delay in moving to amend, even standing alone, may be such an adequate reason. *See* Acosta–Mestre v. Hilton Int'l of P.R., Inc., 156 F.3d 49, 51–52 (1st Cir. 1998); *see also* Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (listing "undue delay" as a reason for denying leave to amend).
>
> In any event, we have repeatedly said that when "considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has [at the very least] the burden of showing some 'valid reason for his neglect and delay.' " Stepanischen v. Merchs. Despatch Transp. Corp., 722 F.2d 922, 933 (1st Cir. 1983) (quoting Hayes v. New Eng. Millwork Distribs., Inc., 602 F.2d 15, 20 (1st Cir. 1979)). And we have previously labeled as "considerable time," warranting explanation, periods of fourteen months, *see* Grant, 55 F.3d at 6, fifteen months, *see* Acosta–Mestre, 156 F.3d at 52, and seventeen months, *see* Stepanischen, 722 F.2d at 933. We have also held that in assessing whether delay is undue, a court will take account of what the movant "knew or should have known and what he did or should have done." Invest Almaz v. Temple–Inland Forest Prods. Corp., 243 F.3d 57, 72 (1st Cir.2001) (quoting Leonard v. Parry, 219 F.3d 25, 30 (1st Cir.2000)).

In re Lombardo, 755 F.3d at 4.

Based upon the standard articulated by the First Circuit, this Court concludes that

Follo has not established grounds for granting the Motion to Amend filed almost four years

after the trial.  The grounds for allowance of the Motion to Amend, essentially those in

support of Follo's view that there was sufficient notice of the § 523(a)(2)(B) claim, fail to

persuade.  In the first instance, if Follo intended to rely upon § 523(a)(2)(B) to obtain a

judgment excepting his state court damage award from discharge, Follo should have

pleaded it at the outset, as § 523(a)(2)(A) and § 523 (a)(2)(B) are mutually exclusive. *See*

Rose v. Lauer (In re Lauer), 371 F.3d 406, 413 (8th Cir. 2004); Middlesex Savings Bank v.

Flaherty (In re Flaherty), 335 B.R. 481, 490 (Bankr. D. Mass. 2005) ("The exception to

discharge under § 523(a)(2)(A) does not deal with deception by means of a statement

relating to the debtor's or an insider's financial condition, which is the subject of section

523(a)(2)(B).").  Following the denial of the Motion for Summary Judgment and the

subsequent denial of the Motion for Reconsideration, Follo knew or should have known

that the Vermont Supreme Court decision, standing alone, was unlikely to establish all the

elements for application of collateral estoppel to either a claim under § 523(a)(2)(A) or to

a claim under § 523(a)(2)(B) without further explication and reference to trial transcripts

and jury instructions.  Follo relied solely on the Vermont Supreme Court's decision at his

peril and any attempt to rectify that trial strategy now is prejudicial to Morency. *See*

Veranda Beach Club Ltd. P'ship, 936 F.2d at 1371.

The Court also is unpersuaded by Follo's argument that he now should be permitted

to amend the pleadings to conform to the evidence.  Follo asserts that his § 523(a)(2)(B)

claim was decided on the merits by both the bankruptcy court and the District Court.  This

Court concludes that that assertion is overstated and plainly wrong. The bankruptcy court specifically indicated the reverse in concluding that Follo failed to establish that issue preclusion was applicable to the claim under § 523(a)(2)(B):

> I need not and do not address arguments Morency has made as to two other issues germane to the application of issue preclusion in Vermont law: whether (i) there was a full and fair opportunity to litigate the issue in the earlier action and (ii) applying preclusion in the later action is fair. Neither need I address the problem posed by the impossibility, on the record before me, of determining what portion of the damages award is attributable to the fraud count. Neither need I address the permissibility of the Plaintiffs' now advancing arguments under subsection 523(a)(2)(B) when they made no mention of that subsection in the Joint Pretrial Memorandum.

2013 WL 1342485, at *14 n.16. Similarly, the District Court left open consideration of whether Follo should be permitted to advance arguments under § 523(a)(2)(B), and whether Follo should be procedurally defaulted for failure to submit the trial transcript and related jury instructions. Follo v. Morency, 507 B.R. at 433-34. Under those circumstances, amending the pleadings to conform to the evidence is unwarranted at this stage in light of First Circuit precedent.

In Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc., 329 F.3d. 216 (1st Cir. 2003), the United States Court of Appeals for the First Circuit stated:

> Consent to trial on a particular claim can be either express or implied. . . ."Consent to the trial of an issue may be implied if, during the trial, a party acquiesces in the introduction of evidence which is relevant only to that issue." DCPB, Inc. v. City of Lebanon, 957 F.2d 913, 917 (1st Cir.1992). But "[t]he introduction of evidence directly relevant to a pleaded issue cannot be the basis for a founded claim that the opposing party should have realized that a new issue was infiltrating the case." Id.; see Galindo v. Stoody Co., 793 F.2d 1502, 1513 (9th Cir. 1986) ("It is not enough that an issue may be 'inferentially suggested by incidental evidence in the record;' the record must

indicate that the parties understood that the evidence was aimed at an
unpleaded issue."). As Kenda points to no evidence introduced against
Kratze and Germain that goes solely to their individual liability under
Chapter 93A, we agree with the district court that the individual defendants
did not consent to the inclusion of the individual Chapter 93A claims.

Even in the absence of consent, explicit or implicit, Kenda argues that the
district court erred in denying the amendment in the absence of a finding
that the late amendment would prejudice the defendants. Kenda fails to
recognize that prejudice, or lack thereof, is only one issue to be weighed in
considering whether an amendment is appropriate. "[A] finding that the
nonmoving party would not be prejudiced by an untimely amendment does
not compel a determination that the amendment is appropriate." United
States v. Davis, 261 F.3d 1, 59 (1st Cir.2001). Finally, Kenda offered no
explanation for its lengthy delay in raising its motion to amend. The district
court did not abuse its discretion when it denied Kenda's motion to amend.

329 F.3d at 232.  Like a motion to amend a complaint, "[a] Rule 15(b) motion may be denied

for a number of reasons, most notably "undue delay" in making the motion and "undue

prejudice" to the opposing party.  Nickless v. Conley (In re Byers), 304 B.R. 1, 7 (B.A.P. 1st

Cir. 2004) (citing Invest Almaz v. Temple–Inland Forest Products Corp., 243 F.3d 57, 71 (1st

Cir. 2001)).

The Court is persuaded by Morency's arguments that she would be prejudiced by

the consideration of the merits of a claim under § 523(a)(2)(B).  Although this Court is

mindful of the need to grant judgments "full faith and credit" when collateral estoppel

requires, the decision of the Vermont Supreme Court is unclear as to precisely what

documents constituted written financial statements that were materially false and were

submitted to Follo with the intention of deceiving him, such that he paid more for the Inn

than it was worth.  The decision is devoid of any indication that the tax returns were

known to be materially false.  If Morency executed the returns before she and Florindo

decided to sell the Inn, it is implausible that they would have inflated the Inn's income, and

concomitantly paid more in taxes, as part of a preordained scheme to obtain an inflated

price for the Inn before they made a decision to sell it.  Moreover, the bankruptcy court

noted that the Vermont Supreme Court decision was unclear as to which year's occupancy

rate Morency is alleged to have falsified.  <u>In re Morency</u>, 2013 WL 1342485, at *3 n.2.

For those reasons, the Court concludes granting Follo's Motion to Amend the

Complaint or granting Follo's Motion for the Court to Take Judicial Notice of jury

instructions at this late date is unwarranted.

## VI. CONCLUSION

In view of the foregoing, the Court shall enter orders denying the Motion to Amend

Complaint Following Trial and the Motion for the Court to Take Judicial Notice of Jury

Instructions.  With respect to the order of remand from the District Court, the Court shall

not permit Follo to advance arguments under § 523(a)(2)(B) and procedurally defaults Follo

for failing to submit sufficient evidence to sustain a cause of action under that section.

Accordingly, this Court concludes that it need not address whether damages should be

apportioned or whether intent to deceive is the equivalent of intent to defraud.[13]    The

---

[13] The Court would be remiss in failing to note that intent to deceive and intent to
defraud frequently are used interchangeably.  *See, e.g.,* <u>Duley v. Thompson (In re
Thompson)</u>, 528 B.R. 721, 740 (Bankr. S.D. Ohio 2015); <u>Hudson Valley Water Resources,
Inc. v. Boice (In re Boice)</u>, 149 B.R. 40, 47-48 (Bankr. S.D.N.Y. 1992); <u>Southwest Fin. Bank
& Trust Co. of Orland Park v. Stratton (In re Stratton)</u>, 140 B.R. 720, 723  (Bankr. N.D. Ill.
1992).

Court shall enter judgment in favor of Morency and against Follo. Follo's debt is not

excepted from discharge.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:  September 18, 2015